Pro Se 1 (Rev. 12/16) Complaint for a Civil Case - TXND (Rev. 9/25)

# UNITED STATES DISTRICT COURT

for the

Northern District of Texas

FORT WORTH Division

| | |
|---|---|
| CHARLES DUSTIN MYERS | Case No. **4-26CV-192-P** |
| | *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | |
| *(Write the full name of each plaintiff who is filing this complaint.* | Jury Trial: *(check one)* ☑ Yes ☐ No |
| *If the names of all the plaintiffs cannot fit in the space above,* | |
| *please write "see attached" in the space and attach an additional* | |
| *page with the full list of names.)* | |
| **-v-** | U.S. DISTRICT COURT |
| | NORTHERN DISTRICT OF TEXAS |
| JAMES B. MUNFORD, ET AL. | FILED |
| | |
| SEE ATTACHED. | FEB 2 0 2026 |
| | |
| *Defendant(s)* | CLERK, U.S. DISTRICT COURT |
| *(Write the full name of each defendant who is being sued. If the* | By _____ |
| *names of all the defendants cannot fit in the space above, please* | Deputy |
| *write "see attached" in the space and attach an additional page* | |
| *with the full list of names.)* | |

## COMPLAINT FOR A CIVIL CASE

### I.    The Parties to This Complaint

#### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | CHARLES DUSTIN MYERS |
| Street Address | 1209 BLAIRWOOD DRIVE |
| City and County | FLOWER MOUND DENTON |
| State and Zip Code | TEXAS 75028 |
| Telephone Number | 817 546 3693 |
| E-mail Address | CHUCKDUSTIN12@GMAIL.COM |

#### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | JAMES B. MUNFORD |
| Job or Title *(if known)* | DISTRICT JUDGE, 322nd DISTRICT CT.TARRANT COUNTY |
| Street Address | 200 E. WEATHERFORD ST. |
| City and County | FORT WORTH TARRANT |
| State and Zip Code | TEXAS 76196-0230 |
| Telephone Number | 817-884-1427 |
| E-mail Address *(if known)* | LKBAKER@TARRANTCOUNTYTX.GOV |

Defendant No. 2

| | |
|---|---|
| Name | RUTH ANNE THORNTON |
| Job or Title *(if known)* | DIRECTOR OF CHILD SUPPORT / TITLE-IVD DIRECTOR - OAG |
| Street Address | 5500 EAST OLTORF STREET |
| City and County | AUSTIN TRAVIS |
| State and Zip Code | TEXAS 78741 |
| Telephone Number | 512-460-6000 |
| E-mail Address *(if known)* | RUTH.THORNTON@TEXASATTORNEYGENERAL.GOV |

Defendant No. 3

| | |
|---|---|
| Name | COOPER LEANNE CARTER |
| Job or Title *(if known)* | ATTORNEY |
| Street Address | 2905 LACKLAND RD. |
| City and County | FORT WORTH TARRANT |
| State and Zip Code | TEXAS 76116 |
| Telephone Number | 817-926-6211 |
| E-mail Address *(if known)* | COOPERCARTER@MAJADMIN.COM |

Defendant No. 4

| | |
|---|---|
| Name | MORGAN MICHELLE MYERS |
| Job or Title *(if known)* | |
| Street Address | 6641 ANNE COURT |
| City and County | WATAUGA TARRANT |
| State and Zip Code | TEXAS 76148 |
| Telephone Number | 817-235-5189 |
| E-mail Address *(if known)* | MORGANMW02@GMAIL.COM |

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case - TXND (Rev. 9/25)

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

[✔] Federal question                    [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.
SEE ATTACHED

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)* _____ , is a citizen of the State of *(name)* _____ .

b.    If the plaintiff is a corporation

The plaintiff, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ , and has its principal place of business in the State of *(name)* _____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant, *(name)* _____ , is a citizen of the State of *(name)* _____ . Or is a citizen of *(foreign nation)* _____ .

SEE ATTACHED

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:                   02/17/2026

Signature of Plaintiff
Printed Name of Plaintiff          CHARLES DUSTIN MYERS

### B.    For Attorneys

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address
State and Zip Code
Telephone Number
E-mail Address

1                 UNITED STATES DISTRICT COURT

2                 NORTHERN DISTRICT OF TEXAS

3                 FORT WORTH DIVISION

4   CHARLES DUSTIN MYERS,
             Plaintiff,
     v.

5   JAMES B. MUNFORD, in his official
capacity as Judge of the 322nd District
Court of Tarrant County, Texas;

Civil Action No._____

4-26CV-192-p

6   RUTH ANNE THORNTON, in her official
capacity as Title IV-D Director for the Texas
Attorney General's Office;

7   COOPER LEANNE CARTER,
in her individual capacity; and

8   MORGAN MICHELLE MYERS
in her individual capacity,

  Defendants.

9

10   **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**

11          42 U.S.C. § 1983; 28 U.S.C. §§ 1331, 1343, 2201–02

12               **I. NATURE OF THE ACTION**

13      This is a civil-rights action under 42 U.S.C. § 1983 for prospective declaratory and

14 injunctive relief and, as to the private defendants, damages. Plaintiff alleges an ongoing course of

15 conduct in state domestic-relations proceedings in Tarrant County, Texas that has deprived him

16 of constitutionally protected liberty and property interests without due process, and that threatens

17 an imminent, unlawful confirmation and enforcement of alleged child-support "arrears" based on

18 a disputed Title IV-D intervention bearing an allegedly forged state-attorney signature.

1     Plaintiff does not ask this Court to grant a divorce, allocate marital property, or enter or

2     modify a custody decree. Plaintiff seeks narrowly tailored federal relief to protect core federal

3     rights—parental association, property, and access to courts—by stopping the confirmation and

4     enforcement of an "arrears debt" where (among other things): (i) the State's Title IV-D agency is

5     being invoked through a pleading and signature that Plaintiff plausibly contends were not

6     authorized; and (ii) the Office of the Attorney General ("OAG") has taken the position that there

7     is "no statutory or legal mechanism ... that would permit the Court to exclude the Office of the

8     Attorney General, as Title IV-D Agency, from participation" in the underlying case, even while

9     simultaneously removing the disputed attorney from the signature block without a motion to

10    withdraw or a sworn explanation. Plaintiff seeks the narrowest federal intervention necessary to

11    restore fair process—so that a neutral state-court tribunal can adjudicate the disputed Title IV-D

12    authority/authenticity issue on evidence before any arrears are confirmed or enforced.

13     Plaintiff further alleges that the private defendants—Myers and her attorney, Carter—

14    were willful participants in joint action with state actors by procuring and enforcing orders

15    without constitutionally adequate process, invoking law enforcement to dispossess Plaintiff from

16    the home and separate him from his children without due process of law, and presenting

17    documents containing false judicial recitals and an allegedly forged state-attorney signature to

18    obtain the coercive leverage of the State in a private domestic dispute.

19     Plaintiff's core allegation is that this case became unconstitutional not because of a mere

20    adverse domestic-relations ruling, but because private actors allegedly secured and then

21    exploited state coercive power—judicial orders, law enforcement presence, and Title IV-D

22    enforcement—without the minimum procedural safeguards required before a parent is separated

23    from his children or a property owner is dispossessed.

2

1    In particular, Plaintiff alleges: (1) Myers launched overlapping eviction/protective-

2 order/divorce filings supported by knowing sworn misrepresentations to obtain emergency

3 leverage; (2) on a courthouse-closure day, the court granted immediate custody and

4 dispossession relief without an evidentiary hearing after the parties agreed to continue; (3)

5 Plaintiff signed a leveraged associate-judge report as a stopgap but promptly withdrew assent

6 and requested immediate review; (4) Carter then presented unfiled, party-drafted "Temporary

7 Orders" containing false judicial recitals and altered terms, which were obtained and signed prior

8 to Myers' police-assisted lockout; (5) Carter later attempted to trigger wage withholding via an

9 unfiled Income Withholding Order; (6) a Title IV-D intervention bearing a disputed state-

10 attorney signature then appeared and was used to generate an arrears posture while the OAG

11 refused to provide sworn identification of the signer and asserted it could not be excluded from

12 participation despite not participating at all; and (7) when raised, Munford then told Plaintiff to

13 subpoena the attorney of record, leaving him without a meaningful forum to contest who is

14 invoking state enforcement power even as arrears were confirmed and damages mounted against

15 him. (8) Myers was able to secure a divorce without participating in the process that she initially

16 corrupted, purposefully depriving Plaintiff of the care, custody, and control of his minor

17 children, his residence, his business, and therefore his livelihood, all while generating revenue in

18 the process, and through unauthorized representation.

19             **II. PARTIES**

20    Plaintiff Charles Dustin Myers is a natural person and resident of Texas. Plaintiff is the

21 father of two minor children referenced in the state proceedings described below.

22    Defendant James B. Munford is a Texas state district judge presiding over the 322nd

23 District Court of Tarrant County, Texas. He is sued in his official capacity for prospective

1    declaratory relief only (and not for damages), consistent with 42 U.S.C. § 1983's limitation on

2    injunctive relief against judicial officers.

3         Defendant Cooper L. Carter is a licensed Texas attorney who appeared for Defendant

4    Myers in the underlying domestic-relations proceedings. Plaintiff sues Carter in her individual

5    capacity. Plaintiff alleges Carter acted under color of state law through joint action and

6    conspiracy with state actors as described below.

7         Defendant Morgan Michelle Myers is a private individual and the opposing party in the

8    underlying domestic-relations proceedings. Plaintiff sues Myers in her individual capacity.

9    Plaintiff alleges Myers acted under color of state law through joint action and conspiracy with

10   state actors as described below.

11        Defendant Ruth Anne Thornton is sued in her official capacity as the Title IV-D Director

12   for the Texas Office of the Attorney General. Plaintiff alleges Thornton, acting through the

13   OAG, is presently seeking or enabling the confirmation and enforcement of alleged child-support

14   arrears against Plaintiff, and is a proper defendant for prospective relief under Ex parte Young.

15                        **III. JURISDICTION AND VENUE**

16        This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)

17   because this action arises under the Constitution and laws of the United States, including 42

18   U.S.C. § 1983.

19        This Court has authority to issue declaratory relief under 28 U.S.C. §§ 2201–2202.

20        To the extent Plaintiff seeks prospective injunctive relief against Defendant Thornton in

21   her official capacity, such relief is not barred by the Eleventh Amendment under the Ex parte

22   Young doctrine because Plaintiff alleges an ongoing violation of federal law and seeks

23   prospective relief to end that violation through mechanisms she has direct control over.

4

1         Plaintiff recognizes that federal courts generally lack authority to enter divorce decrees,

2    modify child-custody orders, or function as appellate courts for state judgments, and that federal

3    courts do not sit to decide the merits of domestic-relations disputes. Plaintiff does not seek such

4    relief. Plaintiff seeks narrowly tailored relief to prevent imminent deprivation of federal rights

5    through the confirmation and enforcement of an allegedly unlawful "arrears debt" without

6    constitutionally adequate process. Plaintiff's claims are not a de facto appeal of a final state-court

7    judgment and therefore do not invoke the Rooker-Feldman bar because Plaintiff does not

8    complain of injuries caused by a final judgment; he challenges independent, ongoing (and

9    imminent) enforcement conduct and structural due-process defects tied to a disputed Title IV-D

10    invocation. See *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). Plaintiff

11    further alleges abstention is unwarranted because: (i) under *Sprint Communications, Inc. v.*

12    *Jacobs*, 571 U.S. 69 (2013), Younger abstention is limited to narrow categories of state

13    proceedings; (ii) the relief sought is directed principally to executive enforcement actors (the

14    Title IV-D agency) and to private parties acting in concert with them, not to the merits of any

15    divorce or custody determination; and (iii) alternatively, extraordinary circumstances and lack of

16    an adequate state forum exist because the state tribunal has repeatedly refused to adjudicate, on

17    evidence, the threshold authenticity/authority issue and the OAG has taken the position that there

18    is "no statutory or legal mechanism" to exclude it from participation even if the pleading was

19    unauthorized, making meaningful relief illusory. To the extent any requested injunction is

20    construed as staying a state proceeding, Plaintiff further pleads that 42 U.S.C. § 1983 is an

21    expressly authorized exception to the Anti-Injunction Act, 28 U.S.C. § 2283. See *Mitchum v.*

22    *Foster,* 407 U.S. 225 (1972).

1        Venue is proper in this District and Division under 28 U.S.C. § 1391(b) because a

2    substantial part of the events and omissions giving rise to the claims occurred in Tarrant County,

3    Texas, within the Fort Worth Division.

4                        **IV. FACTUAL ALLEGATIONS**

5    **[Fact 1]**        On December 12, 2023, Plaintiff discovered a large number of text messages

6    between Morgan Michelle Myers ("Myers") and her current boyfriend, Damen Gault Kazlauskas

7    of Fort Worth, Texas—totaling more than 6,500 messages exchanged from approximately

8    October 2022 through December 2023.

9    **[Fact 2]**        In response to this discovery, Myers allegedly began making false allegations of

10   family violence and abuse, and planned to travel to Yukon, Oklahoma over the weekend of

11   December 15, 2023, to receive help from a family member in preparing an Original Petition for

12   Divorce and an affidavit of inability to pay court costs.

13   **[Fact 3]**        En route to Oklahoma, Myers allegedly emptied the parties' joint marital PNC

14   bank account and sent funds totaling $1,576.00 to a third party's PayPal account, which would

15   later transfer the funds to Myers's private Chase account, as reflected in text messages and bank

16   statements.

17   **[Fact 4]**        While in Oklahoma, Myers allegedly contacted her grandmother, Margie Evonne

18   Wilson ("Wilson"), who is also the landlord of the parties' matrimonial residence at 6641 Anne

19   Court, Watauga, Texas 76148, and influenced Wilson to serve Plaintiff an eviction notice on

20   December 17, 2023, referencing a divorce and protective order that had not yet been filed as

21   purported grounds.

1    **[Fact 5]**        Myers returned to Texas on the evening of December 17, 2023, and submitted the

2    paperwork prepared in Oklahoma to the 322nd District Court of Tarrant County on December

3    18, 2023.

4    **[Fact 6]**        Plaintiff was served on December 27 and 28, 2023, with an eviction suit, a

5    protective-order show-cause order, and the divorce petition.

6    **[Fact 7]**        Four days after service, Myers allegedly approached the 322nd District Court

7    again and requested a standard application for a protective order alleging that family violence

8    occurred on December 18, 2023, in front of the minor children.

9    **[Fact 8]**        Plaintiff was served with: (i) an eviction suit docketed under JP01-23-E00102017;

10   (ii) a protective-order suit docketed under 322-744538-23; and (iii) a divorce suit docketed under

11   322-744263-23.

12   **[Fact 8A]**      Upon inspection of the pleadings and, as Plaintiff alleges, later admissions at final

13   disposition and through unanswered admissions, Plaintiff contends the filings contained knowing

14   misrepresentations under penalty of perjury, including: (i) that the parties stopped cohabitating;

15   (ii) that an active protective order existed with a finding of family violence during the marriage;

16   (iii) that Myers was responsible for all family finances; (iv) that both vehicles were Myers's

17   separate property prior to marriage; (v) that Myers would be abused or harassed if Plaintiff were

18   given her contact information; (vi) that Myers could not afford court costs; and (vii) that family

19   violence occurred on December 18, 2023 in the presence of the minor children.

20   **[Fact 9]**        The protective-order proceeding commanded Plaintiff to appear in the 322nd

21   District Court of Tarrant County on January 16, 2024.

1   **[Fact 10]**      On January 16, 2024, the courtroom was dark due to inclement weather. Plaintiff

2   alleges he later learned the courts had announced closures for January 16, 2024 (including

3   through the Tarrant County District Courts' Facebook page the day prior).

4   **[Fact 11]**      Despite the alleged closure, Munford took up the protective-order matter and

5   offered the parties an opportunity to continue the case, which they accepted to obtain legal

6   representation.

7   **[Fact 12]**      After the parties agreed to continue, Munford allegedly issued an order that

8   divested Plaintiff of care, custody, and control of the minor children, divested him of property

9   interests and his place of business, and gave Plaintiff four hours to vacate without a hearing or

10   findings, while awarding Myers full custody and sole use of the residence.

11   **[Fact 13]**      Munford allegedly threatened Plaintiff with a $500 fine and six months in jail for

12   noncompliance, consolidated the divorce matter with the protective-order matter, and reset the

13   case for January 22, 2024.

14   **[Fact 14]**      Before dismissing the parties, Munford allegedly advised Myers to find evidence

15   of family violence prior to the next setting.

16   **[Fact 15]**      On January 22, 2024, Plaintiff appeared with retained counsel Dan Bacalis. Myers

17   allegedly retained attorney Cooper L. Carter moments prior, and the hearing was continued to

18   February 1, 2024.

19   **[Fact 16]**      On February 1, 2024, the parties were presented with a settlement agreement in

20   the form of an "associate judge's report" that, among other things: (i) non-suited the protective

21   order; (ii) allowed Plaintiff to return to the home until March 1, 2024 and Myers to return after

22   March 1, 2024; (iii) kept the children with Myers; and (iv) set child-support obligations to begin

23   April 1, 2024 to be paid by Plaintiff.

8

1    **[Fact 17]**    The associate judge's report also ordered and reflected agreement that: (i) a typed

2    written order conforming to the report would follow within 20 days; (ii) the typed order was

3    required to be prepared by Dan Bacalis; (iii) the typed order was required to be approved by both

4    attorneys; and (iv) if no agreement were reached, a motion to sign was required to be filed and

5    set within 30 days of the report.

6    **[Fact 18]**    Taking the ordered procedures into consideration, Plaintiff signed the associate

7    judge's report, terminated Bacalis, and notified the court and parties.

8    **[Fact 18A]**    Plaintiff alleges his retained counsel advised that, given the custody and

9    dispossession posture created on January 16, 2024, settlement was the only realistic way to

10    regain stability and avoid the continued coercive leverage of orders entered without an

11    evidentiary hearing. Plaintiff further alleges that his signature on the February 1, 2024, associate

12    judge's report was therefore a compelled, temporary stopgap—not a knowing and voluntary

13    waiver of his right to contest the underlying allegations—and was a strategic decision that was

14    made by Plaintiff because the termination of his counsel made the reduction of the agreement

15    impossible. *See* Fact 17 (ii).

16    **[Fact 19]**    Within three working days after the associate judge's report was filed and served,

17    Plaintiff prepared and served an emergency motion (served February 9, 2024) seeking immediate

18    review and relief from any purported "agreement" based on (among other things) withdrawal of

19    assent, procedural noncompliance, and newly produced evidence. Plaintiff's motion attached and

20    proffered evidence of alleged misconduct, including texts between Myers and Kazlauskas; texts

21    from Myers's family indicating the divorce announcement was a blindside; the bank statement

22    reflecting the $1,576.00 transfer; and texts in which Myers allegedly admitted the transfer.

1    Plaintiff requested to be heard promptly and, in substance, requested the functional equivalent of

2    de novo review of the associate judge's proposed disposition.

3    **[Fact 19A]**      Plaintiff alleges that Texas associate-judge procedure provides for a prompt de

4    novo hearing before the referring court upon a timely request after an associate judge signs a

5    proposed order. Plaintiff alleges his February 9, 2024, filing was timely under that framework

6    and should have triggered an evidentiary hearing on (i) the withdrawn agreement; (ii) the

7    absence of any properly reduced agreed order following termination of counsel; and (iii) the

8    underlying factual allegations. Instead, rather than adjudicate Plaintiff's objections on evidence,

9    the court proceeded without such a hearing and later signed party-drafted "Temporary Orders"

10   containing false judicial recitals by the same associate judge.

11   **[Fact 20]**      Carter emailed Plaintiff on February 14, 2024 stating she would prepare a counter

12   motion. A notice of hearing was filed and signed by Munford on February 27, 2024, setting

13   Plaintiff's emergency motion for hearing on March 14, 2024.

14   **[Fact 21]**      On March 3, 2024, Plaintiff filed a Notice and Unsworn Declaration in Cause No.

15   322-744263-23 stating it was impossible for him to vacate the marital residence pending review

16   because he had been reinstated to the home, was maintaining stability for the children, and was

17   operating an at-home business essential to support them; Plaintiff also stated Myers's decision to

18   remain outside the home during the transition was voluntary. [cv]

19   **[Fact 22]**      Three days later, while Plaintiff was walking the children to school, Myers

20   allegedly ran into the home and locked Plaintiff out, leaving a sign stating he should have been

21   out by Saturday, March 1, 2024.

22   **[Fact 23]**      When Plaintiff attempted to re-enter, Myers stated police had already been called;

23   officers arrived, and Myers presented the February 1, 2024 associate judge's report and pointed

1    to the judge's signature, which Plaintiff alleges influenced the officers to recommend Plaintiff

2    leave to prevent conflict.

3    **[Fact 24]**    Plaintiff was permitted to gather a few belongings while police stood by; he

4    retrieved clothes and his computer and left to stay with his father in Flower Mound, Texas until

5    the hearing.

6    **[Fact 25]**    On March 14, 2024—at a setting noticed for hearing on Plaintiff's emergency

7    motion (Fact 19) and with no file-stamped response from Carter—Plaintiff observed Myers and

8    Carter in a side conference room shuffling papers. Carter then handed Plaintiff, for the first time

9    and moments before the matter was called, party-drafted "Temporary Orders" that were not

10   file-stamped and had not been served in advance. Plaintiff alleges the documents were presented

11   as a fait accompli and used to reframe the setting away from adjudication of Plaintiff's

12   emergency motion and toward signing Carter's proposed orders in violation of due process.

13   **[Fact 26]**    The documents were titled "Temporary Orders" and contained facially false

14   judicial recitals, including that: (i) a hearing occurred on February 1, 2024 on a motion for

15   temporary orders filed by Myers; (ii) the court heard argument and evidence from counsel; (iii)

16   all prerequisites of law had been met; and (iv) as evidenced by signatures below, all parties

17   agreed to the terms. Plaintiff alleges these recitals were untrue, and that the orders were

18   presented without prior clerk filing or notice as though they were already operative.

19   **[Fact 26A]**    Plaintiff alleges that, despite Texas procedure requiring orders to be entered and

20   served through the clerk, Carter was permitted to circulate and enforce these party-drafted

21   "Temporary Orders" as if they were court orders even though they were not filed with the clerk

22   at the time they were presented, lacked Plaintiff's signature, and were not served through the

23   ordinary clerk process until March 26, 2024—twelve days after the hearing.

1    **[Fact 27]**    Plaintiff alleges the "Temporary Orders" mischaracterized the February 1, 2024

2    associate judge's report because Carter changed the terms, including: (i) removing the language

3    non-suiting the protective order; and (ii) unilaterally changing the dates for occupancy of the

4    home to March 20, 2024 for Plaintiff and March 30, 2024 for Myers, creating a ten-day gap

5    where no party would occupy the home.

6    **[Fact 28]**    Plaintiff contends the "Temporary Orders" could not have been an agreement

7    because: (i) they were not prepared by Bacalis, who had been terminated; (ii) they did not

8    conform to the February 1, 2024 associate judge's report; (iii) they were not approved by both

9    attorneys; and (iv) they were not agreed to by both parties.

10    **[Fact 29]**    Despite no opposition being filed to Plaintiff's emergency motion, Munford's

11    associate judge denied the motion, signed the "Temporary Orders," and also signed another

12    associate judge's report prepared by Carter.

13    **[Fact 30]**    The associate judge's report prepared by Carter stated: (i) Plaintiff's motion to

14    vacate is denied; (ii) Plaintiff must provide Myers a list of items he needs from the residence;

15    (iii) language was added by the associate judge regarding Plaintiff's business; and (iv) Plaintiff

16    was ordered to sign the "Temporary Orders" by 1:30 p.m. that same day.

17    **[Fact 31]**    Plaintiff refused to sign the orders and began filing petitions for writ of

18    mandamus seeking to vacate the temporary orders; Plaintiff alleges the clerk served the

19    temporary orders on March 26, 2024, bearing only Carter's and Myers's signatures.

20    **[Fact 32]**    Plaintiff sought appellate relief in the Second Court of Appeals and the Texas

21    Supreme Court while Myers and Carter allegedly failed to prosecute their claims, filed little or

22    no evidence-based support for the extraordinary relief they were enjoying, and did not

23    meaningfully respond to Plaintiff's repeated motions challenging the factual and procedural basis

1  for those orders. Plaintiff alleges Myers nonetheless continued to enjoy the practical benefits of

2  custody, exclusive use of the residence, and enforcement leverage, while the burden and cost of

3  seeking any review fell almost entirely on Plaintiff.

4  **[Fact 33]**    During Plaintiff's appellate efforts, Carter emailed Plaintiff a Federal Income

5  Withholding Order ("IWO") and represented that it was "from the Court," asking Plaintiff to

6  complete it within ten days. Plaintiff alleges the emailed IWO was not filed with the clerk, was

7  not served as a file-stamped court order, and was downloaded from the website of the office of

8  the attorney general.

9  **[Fact 34]**    Plaintiff found the IWO defective, requested corrections, and received no further

10  correspondence from Carter on that issue.

11  **[Fact 34A]**    Plaintiff alleges that after he refused to act on the defective, unfiled IWO, Carter

12  went silent and the next "enforcement" development was the appearance of a Title IV-D

13  intervention bearing a disputed state-attorney signature—an escalation Plaintiff alleges was

14  designed to substitute the coercive weight of the State for the ordinary burden of proof in a

15  private domestic dispute.

16  **[Fact 34B]**    Upon information and belief, publicly available State Bar profile information for

17  Carter and for the purported OAG attorney "Holly L. Hayes" reflected profile updates on March

18  13, 2024—the day before the March 14, 2024 hearing at which Carter presented the disputed

19  "Temporary Orders." Plaintiff pleads this timing as circumstantial evidence of coordination

20  pending discovery.

21  **[Fact 35]**    On June 28, 2024, an OAG Title IV-D "Intervention" was filed in the divorce

22  matter seeking, among other things, current support relief and confirmation/enforcement of

23  alleged arrears. Plaintiff alleges this intervention followed Carter's earlier transmission of a

1    purported court income-withholding order (Facts 33-34) and that Carter caused or facilitated the

2    filing by using the name of an attorney associated with the OAG Child Support Division ("Holly

3    L. Hayes"). Plaintiff further alleges the intervention itself asked the state court to "make

4    appropriate orders" for current child support, medical support, and dental support (including

5    temporary support), implicitly conceding uncertainty as to whether a valid support order existed

6    to generate the claimed arrears; Plaintiff objected and alleges the OAG provided no substantive

7    response for many months. Plaintiff also alleges the filing contained internal inconsistencies

8    (including certificate-of-service/signature irregularities suggesting Hayes signed for another

9    OAG attorney), creating immediate confusion as to who actually authorized the State's

10    appearance.

11    **[Fact 36]**    Plaintiff alleges that, to make the Title IV-D intervention appear legitimate and to

12    invoke the coercive credibility of the State in a private divorce dispute, Carter forged Holly L.

13    Hayes's signature (or arranged for a forged signature to be used), and then failed to correct,

14    authenticate, or meaningfully address the defect once Plaintiff objected. Plaintiff alleges he

15    compared the challenged signature against dozens (and, upon information and belief, over one

16    hundred) other Title IV-D intervention pleadings bearing Hayes's signature in other cases, and

17    that the signature used in this case is the sole outlier.

18    **[Fact 37]**    Plaintiff alleges the signature used on the June 28, 2024, intervention does not

19    match Hayes's signatures on prior Title IV-D pleadings in other cases. Plaintiff further alleges

20    the challenged signature is a generic electronic signature consistent with a default Adobe

21    Acrobat stylized signature (i.e., not the stylized signature used by Hayes in other filings) and is

22    therefore easily reproducible by any user with common PDF signature tools. Plaintiff alleges this

23    defect is visible on the face of the filing and was raised promptly.

1   **[Fact 38]**    Plaintiff further alleges Hayes is not a payrolled employee of the Office of the

2   Attorney General; that Hayes publicly discloses employment with the SBA; and that the phone

3   number listed on Hayes's State Bar profile is associated with the Arlington City Attorney's

4   office - facts Plaintiff contends are inconsistent with Hayes being a duly authorized OAG

5   attorney-of-record in his case.

6   **[Fact 39]**    Plaintiff was denied relief in the Texas Supreme Court in August 2024 and moved

7   for rehearing by mid-September 2024 under cause number 24-0395.

8   **[Fact 40]**    With no active participation from Carter, Plaintiff invoked Texas Rule of Civil

9   Procedure 12 and challenged Carter's authority to represent Myers; Plaintiff alleges Carter

10  ignored the challenge for the remainder of the case.

11  **[Fact 41]**    The next substantive action from Carter did not occur until March 2025 in

12  response to Plaintiff filing an original SAPCR in the 233rd District Court seeking declaratory

13  relief that the March 14, 2024 temporary orders were void and seeking an emergency TRO for

14  dental care for the youngest child and to prevent Myers from barring access to the home using

15  those orders.

16  **[Fact 42]**    Plaintiff alleges that after communicating with court staff, with Myers and Carter,

17  and providing them documents and the time he would present his emergency motion, he was

18  again denied access to the courts due to Carter's actions.

19  **[Fact 43]**    Plaintiff alleges that on March 29, 2025, after traveling to the 233rd District Court

20  and meeting with the coordinator and agreeing to a hearing date, he was told to wait in the

21  courtroom to present his motion.

22  **[Fact 44]**    Plaintiff alleges that when his case was called, the associate judge left the room,

23  had ex parte communications with court staff and Carter, returned, stated Carter would file a

1    motion to consolidate the next week, and Plaintiff was told to leave and prevented from being

2    heard; Plaintiff alleges Carter again failed to respond to his emergency motion.

3    **[Fact 45]**    Plaintiff objected to consolidation in both courts and prepared a mandamus

4    seeking to compel the associate judge to hear his emergency motion; Plaintiff alleges the district

5    judge of the 233rd granted consolidation sua sponte in both the 233rd and 322nd, leading to a

6    third mandamus.

7    **[Fact 46]**    During this period, Munford set a status-conference proceeding; Plaintiff objected

8    and moved to recuse for a second time; Munford declined and continued using his court

9    coordinator, who Plaintiff alleges acted ultra vires and performed actions reserved for the district

10    clerk under Texas Rule of Civil Procedure 18a(e), prompting Plaintiff's objection.

11    **[Fact 47]**    Regional Presiding Judge David L. Evans overruled Plaintiff's objection, and

12    Plaintiff filed a fourth mandamus in the Texas Supreme Court seeking to compel compliance

13    with mandatory recusal procedures.

14    **[Fact 48]**    The regional judge appointed John H. Cayce, who denied the recusal motions

15    without a hearing, citing failure to comply with Rule 18a—the same rule Plaintiff alleges was

16    violated—leading to a fifth mandamus.

17    **[Fact 49]**    Plaintiff alleges Carter, Myers, and Munford did not participate in these

18    mandamus matters, allowing multiple mandamus petitions—at times five concurrently—to be

19    pending before the Texas Supreme Court. Plaintiff moved to consolidate them, including (among

20    others) Nos. 24-0395, 25-0361, 25-0367, 25-0378, 25-0426, 25-0458, 25-0861, and 26-0117.

21    **[Fact 50]**    Plaintiff alleges that only after all five mandamus petitions were denied did

22    Munford sua sponte set the divorce matter for final trial, prompting a third recusal effort with

23    similar issues involving the court coordinator and regional judge.

1    **[Fact 51]**    Plaintiff alleges that because the recusal was tertiary, the regional judge ordered

2    Carter to file a motion for sanctions despite Carter never responding to the recusal; Plaintiff

3    objected, and Plaintiff alleges the issues remained unaddressed.

4    **[Fact 52]**    On November 5, 2025, Plaintiff filed a no-evidence motion for summary

5    judgment asserting that Myers and Carter had no evidence of family violence during the

6    marriage, no evidence Plaintiff agreed to the March 14, 2024 temporary orders, no evidence

7    Myers was indigent on December 18, 2023, no evidence the temporary orders were in the

8    children's best interests, no evidence a lawful temporary-orders hearing with notice and service

9    occurred on February 1, 2024, and no evidence any active protective order with a judicial finding

10    of family violence ever existed. Munford set the motion for hearing sua sponte for December 2,

11    2025.

12    **[Fact 53]**    Carter amended the divorce petition on November 23, 2025, expanding family-

13    violence claims into multiple years of alleged child abuse and seeking to restrict Plaintiff's

14    access and require supervised visitation.

15    **[Fact 54]**    On November 24, 2025, Carter filed what Plaintiff alleges was her only

16    responsive pleading in the case—a response to Plaintiff's no-evidence motion for summary

17    judgment—which Plaintiff alleges Carter failed to sign.

18    **[Fact 55]**    Plaintiff alleges that on December 2, 2025, Carter and Myers failed to produce a

19    scintilla of evidence defeating the challenged elements raised in Plaintiff's no-evidence motion

20    for summary judgment, failed to cure the signature defect in Carter's response, and Munford

21    took the matter under advisement.

22    **[Fact 56]**    Munford denied the no-evidence motion on December 9, 2025, and trial

23    proceeded on December 10, 2025. Plaintiff alleges Myers admitted at trial to lying about family

1    violence, admitted traveling across state lines to obtain assistance in filing the initial paperwork,

2    admitted she had been represented by an attorney throughout the litigation, and admitted she did

3    not prosecute her case or respond to allegations made against her.

4    **[Fact 57]**    Plaintiff alleges the only evidence admitted at final trial was Plaintiff's inventory

5    and appraisal and child-support arrears confirmed by the Office of the Attorney General's Choya

6    Burkley without a valid motion; Plaintiff alleges Myers and Carter presented no evidence, yet the

7    court proceeded to grant relief affecting custody, support, and property. Plaintiff alleges this

8    sequence illustrates how Myers obtained and retained extraordinary relief without meeting her

9    burden of proof, while the State's Title IV-D machinery supplied enforcement leverage in her

10    favor.

11    **[Fact 58]**    Munford took the divorce under advisement. Plaintiff filed a First Amended

12    Motion to Strike the Office of the Attorney General on December 29, 2025, reiterating issues

13    concerning Holly Hayes's signature and authority.

14    **[Fact 59]**    On January 7, 2026, OAG attorney Choya Burkley responded to Plaintiff's

15    motion to strike with a general denial and a demand for "strict proof," while (Plaintiff alleges)

16    refusing to provide any sworn identification of who actually signed, authorized, or filed the June

17    28, 2024, Title IV-D intervention that initiated the arrears posture. Plaintiff further alleges that,

18    after filing this general denial, the OAG removed Holly Hayes's name from the signature block

19    in subsequent filings without filing a motion to withdraw, a notice of substitution, or any sworn

20    clarification of Hayes's role, and began rotating multiple new names into the signature block

21    (including Brandon Manus). Plaintiff contends this sequence is an "absurd" procedural inversion:

22    the OAG demanded strict proof while simultaneously altering the public record in a way that

23    obscured the identity of the original signer and deprived Plaintiff of a stable, subpoenaable

1   attorney-of-record. Plaintiff further alleges that, despite the OAG's quiet removal of Hayes from

2   signature blocks, case notices from appellate courts and the Texas EFM continued to treat Hayes

3   as attorney-of-record (Fact 65), reinforcing Plaintiff's claim that the OAG's actions functioned

4   as a post hoc effort to sanitize a disputed filing rather than authenticate it.

5   **[Fact 60]**    Munford issued a letter ruling dated January 12, 2026. Plaintiff alleges the letter

6   ruling, among other things, (i) confirmed alleged child-support arrears of $17,376.31 as of

7   November 30, 2025; (ii) awarded a money judgment for that amount (including interest) and

8   directed that execution issue; and (iii) simultaneously stated that a later proceeding would be

9   held to sign a final divorce decree and "hear the post-trial" motion to strike the OAG

10  intervention. Plaintiff further alleges the letter ruling stated that a typed written order conforming

11  to the letter ruling would follow and that the final written order would be prepared by Cooper

12  Carter. Plaintiff further alleges the letter ruling stated Petitioner's counsel was to draft the written

13  order denying Plaintiff's no-evidence motion for summary judgment but failed to do so,

14  prompting the Court to prepare and sign that order itself.

15  **[Fact 61]**    Plaintiff objected to the letter ruling, alleging it granted relief nobody requested

16  and confirmed arrears before hearing the motion to strike the OAG.

17  **[Fact 62]**    On January 26, 2026, Plaintiff discovered what he alleges are numerous Title

18  IV-D cases being prosecuted through the Texas electronic filing manager ("EFM") using

19  placeholder or non-traceable attorney identifiers that do not correspond to a real, traceable Texas

20  State Bar number. Plaintiff alleges his EFM queries showed, for example, that an "AG" identifier

21  was associated with approximately 4,490 cases filed between September 1, 2021 and January 27,

22  2026; that an "ATTYGEN" identifier was associated with approximately 2,798 cases in the same

23  period; that a placeholder label "ATTORNEY GENERAL" appeared statewide in approximately

1    15,247 cases across 54 counties; and that in Dallas County a numeric identifier "UNIT 413"

2    recurred in more than 26,000 cases. Plaintiff alleges these volumes suggest a systemic practice

3    that impairs a litigant's ability to identify a real attorney-of-record, test authority, obtain Rule 12

4    relief, effect service, or subpoena the actual signer/decisionmaker who signs and files Title IV-D

5    pleadings. Plaintiff filed an emergency motion requesting an emergency stay so it could be

6    determined whether Holly Hayes was an authorized representative for the State in Plaintiff's case

7    and whether similar placeholder practices were infecting the administration of Title IV-D actions

8    more broadly.

9    **[Fact 63]**    On January 29, 2026, the OAG filed its First Amended Answer to Plaintiff's

10    motion to strike and asserted, among other things, that: (i) the OAG may demonstrate its

11    assignment by "a pleading by the Title IV-D agency" that is admissible and "does not require

12    further authentication or verification"; (ii) assistant attorneys general may appear

13    "interchangeably"; (iii) services provided by contract attorneys may include "reviewing and

14    signing pleadings"; and (iv) there is "no statutory or legal mechanism" permitting the state court

15    to exclude the OAG from participation. Plaintiff alleges these positions were asserted without

16    any sworn identification of who signed or authorized the disputed June 28, 2024 intervention that

17    initiated the arrears posture at issue here, and that the combination of self-authentication,

18    interchangeable signers, and a claimed inability to exclude the OAG creates a structural due-

19    process defect when authenticity/authority is disputed.

20    **[Fact 64]**    Plaintiff filed a surreply the same day, requested production of Holly Hayes at the

21    upcoming hearing, and prepared a mandamus petition to the Second Court of Appeals (02-26-

22    00075-CV), which was denied on February 5, 2026.

1    **[Fact 65]**    Plaintiff alleges that in the electronic filing manager, notices from the Second

2    Court of Appeals were still being delivered to Holly Hayes as attorney of record, indicating the

3    clerk was manually modifying case notices; Plaintiff informed the court in a notice.

4    **[Fact 66]**    Plaintiff appealed to the Texas Supreme Court and requested an emergency stay;

5    Plaintiff's petition was filed and docketed under cause number 26-0117 on February 6, 2026 and

6    remains pending.

7    **[Fact 67]**    On February 9, 2026, the parties appeared before the 322nd District Court with

8    Munford presiding. Plaintiff alleges that upon entrance he was handed an unfiled "Final Divorce

9    Decree" that was prepared by Victoria Weaver - not by Cooper Carter, despite Munford's

10    January 12, 2026, letter ruling stating the final written order would be prepared by Carter.

11    Plaintiff alleges this irregular substitution of a new drafter (without a filed motion, notice, or

12    clerk filing) is consistent with the broader pattern of non-transparent, non-accountable papering

13    practices challenged here.

14    **[Fact 68]**    Plaintiff requested that Carter meet him in the conference room and requested that

15    Holly Hayes attend the hearing; Plaintiff alleges Carter stormed off and claimed she had nothing

16    to do with Hayes.

17    **[Fact 69]**    At the hearing, Plaintiff raised the alleged signature and payroll issues and lack of

18    a motion to withdraw, requested the court produce Holly Hayes, and asserted Hayes was still

19    performing Title IV actions in other cases after being removed from Plaintiff's divorce case.

20    **[Fact 70]**    Munford denied Plaintiff's request, stated Plaintiff had to subpoena the attorney

21    of record to the hearing, and shut the hearing down, taking it under advisement - despite

22    Plaintiff's allegation that the disputed attorney ("Holly Hayes") remained listed as attorney-of-

23    record in the electronic filing system. Plaintiff further alleges this instruction was practically

21

1    impossible and constitutionally irrational given the OAG's later-asserted position that assistant

2    attorneys general may appear interchangeably and contract attorneys may sign pleadings, leaving

3    Plaintiff without a stable, identifiable witness to subpoena regarding who actually

4    signed/authorized the June 28, 2024 intervention.

5    **[Fact 71]**    The next day, Munford's court coordinator emailed the parties a denial of

6    Plaintiff's First Amended Motion to Strike, prompting Plaintiff to file a motion to recuse both

7    Munford and the regional presiding judge.

8    **[Fact 72]**    Munford declined to recuse on February 11, 2026 and forwarded the motion to the

9    regional presiding judge; Plaintiff alleges a decision is still pending regarding whether Munford

10    will recuse or whether the motion will be forwarded to the Texas Supreme Court Chief Justice.

11    **[Fact 73]**    Plaintiff began preparing this civil-rights complaint seeking: (i) injunctive relief to

12    stop the alleged unlawful divorce and arrears-confirmation process; and (ii) damages against

13    Carter and Myers for alleged joint action with the State in violating Plaintiff's constitutional

14    rights and causing substantial damages.

15    **[Fact 74]**    On October 15, 2025, Plaintiff filed a sworn "Inventory and Appraisal" in the

16    underlying divorce case (Cause No. 322-744263-23). In that filing, Plaintiff identified (among

17    other things): (i) secured vehicle equity in a 2020 Mazda3 of approximately $13,721.00 (vehicle

18    value $18,000.00 less loan payoff approximately $4,279.00); (ii) unsecured liabilities incurred

19    since being dispossessed from the home totaling $31,544.92; (iii) separate-property business

20    equipment (computer/electronics) valued at approximately $3,000.00; and (iv) a documented

21    business-value decline, estimated at $532,299.00 to $887,166.00, which Plaintiff attributes to

22    forced displacement, lack of access to home-based infrastructure, and loss of goodwill/revenue.

1    Plaintiff's inventory states annual business revenue fell from $100,991.73 (2022) to $12,275.12

2    annualized (2025).

3    **[Fact 75]**    The electronic service certificate for Plaintiff's October 15, 2025 Inventory and

4    Appraisal (Texas EFM Envelope ID 106878226) lists "HOLLY HAYES" at csd-legal-

5    914@texasattorneygeneral.gov as a case contact/recipient for OAG Title IV-D notice purposes,

6    alongside Carter and Myers. Plaintiff alleges this corroborates that Hayes remained treated as a

7    case contact and attorney-of-record for notice/service purposes well after the disputed June 28,

8    2024 Title IV-D intervention, and it contradicts any post hoc attempt to quietly remove Hayes

9    from the case without a motion to withdraw or sworn clarification.

10    **[Fact 76]**    Plaintiff's Inventory and Appraisal further explains that Plaintiff cannot complete

11    a full inventory of personal and children's property because he has been barred from the

12    residence and many items have been withheld, disposed of, or rendered inaccessible. Plaintiff

13    also reported that personal property inside the repossessed 2023 Mazda CX-5 was not returned

14    and is considered lost, while the deficiency amount remains unknown. Plaintiff alleges these

15    economic harms were proximately caused by the same dispossession and enforcement leverage

16    challenged here.

17    **V.ORGANIZED FACTS SUPPORTING FEDERAL JURISDICTION AND**
18    **EXCEPTIONS TO ABSTENTION/IMMUNITY**
19
20    Plaintiff anticipates Defendants will argue that this Court must abstain or dismiss under

21    Younger, Rooker-Feldman, Eleventh Amendment/judicial immunity, the Anti-Injunction Act,

22    and domestic-relations abstention. The facts below are reorganized and pleaded to show (a) why

23    those doctrines do not apply to the narrow, process-based federal claims asserted; and (b) in the

24    alternative, why extraordinary circumstances and state-forum inadequacy make

25    abstention/dismissal improper at the pleading stage.

23

1    The core federal controversy is not "who should have custody," "who should get the

2    house," or "how much support is owed." It is whether the State may invoke and enforce Title IV-

3    D collection power and confirm a money-judgment arrears debt through an intervention whose

4    signer's identity and authority remain disputed, while the state tribunal refuses to adjudicate that

5    threshold authenticity/authority issue on evidence and the OAG asserts there is "no statutory or

6    legal mechanism" to exclude it from participation even if the intervention was unauthorized.

7    (Facts 35–38, 58–63, 69–72).

8    The requested federal relief is deliberately designed to facilitate—not supplant—state

9    adjudication: a narrow declaration of the minimum due-process required on the threshold "who

10    signed/with what authority" issue and a narrowly tailored injunction directed to executive

11    enforcement actors (the Title IV-D agency) to pause arrears confirmation/collection until a fair,

12    evidentiary hearing can occur in state court with a real, identifiable attorney-of-record. (Facts

13    58–63, 69–72).

14    **1. Younger abstention and extraordinary-circumstances exceptions**

15    Younger abstention should not apply because Plaintiff does not seek to enjoin the divorce

16    itself, custody determinations, or the merits of any SAPCR; rather, he seeks to stop imminent

17    executive enforcement of an "arrears debt" until the threshold authority/authenticity dispute is

18    adjudicated with constitutionally adequate process. (Facts 58–63, 69–72).

19    Under *Sprint Communications*, Younger is limited to narrow categories of state

20    proceedings. Plaintiff pleads that the challenged conduct principally concerns (i)

21    executive/agency enforcement posture and policies (Title IV-D self-authentication,

22    interchangeable signers, and "placeholder attorney" designations), and (ii) fraud/joint action by

24

1    private parties using state machinery, not a request for federal appellate review of domestic-

2    relations merits. (Facts 35–38, 62–63).

3          Alternatively, even if Younger were deemed applicable, Plaintiff pleads extraordinary

4    circumstances and the narrow exceptions—bad faith/harassment, biased or structurally

5    inadequate forum, and great/immediate irreparable harm—supported by specific fact numbers.

6    Younger exception—bad faith / harassment (non-exhaustive): Myers's pre-suit and early-suit

7    misconduct and sworn misrepresentations used to trigger emergency state action (Facts 2–8A);

8    closure-day adjudication followed by immediate dispossession and custody divestiture without

9    hearing/findings after a continuance was accepted (Facts 10–14); party-drafted "Temporary

10   Orders" with false judicial recitals of hearing/evidence/agreement rubber-stamped and used to

11   leverage police removal (Facts 26–31, 22–24); the sequence from a never-filed/defective IWO to

12   a Title IV-D intervention bearing a disputed signature used to initiate arrears leverage (Facts 33–

13   38); and the late-stage expansion of family-violence allegations after long non-prosecution,

14   followed by denial of a no-evidence MSJ without evidence and the confirmation of arrears

15   without a valid motion (Facts 52–57, 60).

16         **Younger exception—biased / inadequate forum (non-exhaustive):** the courthouse-

17   closure hearing and immediate deprivation without process (Facts 10–14); the associate-judge

18   report's ordered procedures being bypassed and replaced with unfiled, party-authored orders

19   (Facts 17–31); repeated denial of meaningful hearings through abrupt termination and alleged ex

20   parte communications (Facts 42–45, 69–70); ultra vires handling of recusal routing under Texas

21   Rule 18a and denial of recusal motions without a hearing (Facts 46–48, 50–51, 71–72); denial of

22   the motion to strike the OAG intervention by coordinator email and refusal to adjudicate the

1   signer's identity/authority on evidence while arrears confirmation proceeded (Facts 58–63, 69–

2   71).

3        **Younger exception—great and immediate irreparable harm (non-exhaustive):**

4   immediate loss of home, business base, and day-to-day parenting time under threat of jail (Facts

5   12–13); police-enforced lockout and forced separation from minor children (Facts 22–24);

6   ongoing impairment of the parent-child relationship and medical/dental harm issues that required

7   emergency relief (Facts 41, 53); and imminent arrears enforcement through judgment/collection

8   tools (Facts 57, 60–63), with concrete economic damage shown by Plaintiff's sworn Inventory

9   and Appraisal (Facts 74–76).

10       Critically, these are not "garden-variety" state-court errors. Plaintiff pleads a structural

11  due-process problem: when the State's Title IV-D agency is invoked through a disputed signer,

12  the OAG claims the pleading is self-authenticating and requires no verification, assistant

13  attorneys may appear interchangeably, contract attorneys may sign pleadings, and there is "no

14  statutory or legal mechanism" to exclude the OAG—even while the OAG refuses to provide

15  sworn identification of who actually signed/authorized the intervention and alters signature

16  blocks post hoc. (Facts 59–63).

17       Because the state tribunal has repeatedly refused to adjudicate the threshold

18  authenticity/authority dispute on evidence and proceeded (or threatened to proceed) on the

19  premise that exclusion/verification is unavailable as a matter of law, Plaintiff pleads that the third

20  Younger factor ("adequate opportunity to raise federal issues in state court") is rebutted as

21  applied to the discrete federal issue presented. (Facts 58–63, 69–71).

22       Plaintiff also pleads that the relief requested is the least intrusive and respects federalism:

23  it seeks only to preserve the status quo against imminent executive collection actions until a fair

1    and impartial state-court hearing on the threshold authority/authenticity issue can occur, with a

2    stable, subpoenaable attorney-of-record identified under oath. (Facts 60–63, 69–72).

3                                **2. Rooker-Feldman**

4            Plaintiff does not seek appellate review of a final state-court judgment. He challenges

5    independent, ongoing (and imminent) enforcement conduct and structural process defects tied to

6    a disputed Title IV-D invocation—injuries caused by Defendants' conduct, not by the mere

7    existence of a final judgment. (Facts 35–38, 58–63, 69–72).

8            **Plaintiff further pleads that key proceedings remain ongoing and non-final for**

9    **federal jurisdiction purposes:** Munford's January 12, 2026 letter ruling contemplated a later

10    hearing to sign a final decree and to "hear" post-trial challenges to the OAG intervention; and the

11    February 9, 2026 hearing ended without adjudicating the signer/authority dispute on evidence

12    while arrears posture remained. (Facts 60, 67–72). In the event any final decree is entered,

13    Plaintiff will and has notified the Court of his intent to promptly appeal to preserve this Court's

14    jurisdiction.

15                **3. Eleventh Amendment immunity and Ex parte Young**

16            Plaintiff seeks no damages from the State, the OAG, Munford, or Thornton in their

17    official capacities. As to Thornton, Plaintiff seeks only prospective relief to end an ongoing

18    federal constitutional violation: the threatened confirmation and enforcement of arrears and the

19    use of Title IV-D coercive tools without a meaningful hearing on whether Title IV-D authority

20    was lawfully invoked. (Facts 58–63, 69–72).

21            Thornton is a proper Ex parte Young defendant because, as the Title IV-D Director, she

22    has a direct enforcement connection to the challenged Title IV-D collection/enforcement posture

23    and the policies and practices governing who may sign and file Title IV-D pleadings and who is

1  designated as attorney-of-record for service and subpoenas. The requested injunction runs only

2  to her and those acting in active concert with the Title IV-D agency. (Facts 62–63, 75).

3  **4. Judicial immunity and § 1983's limitation on injunctive relief against judicial officers.**

4  Plaintiff sues Munford in his official capacity for prospective declaratory relief only.

5  Plaintiff does not seek damages against Munford. Plaintiff seeks injunctive relief against a

6  judicial officer only in the alternative and only to the extent permitted by 42 U.S.C. § 1983 (i.e.,

7  where declaratory relief is violated or unavailable).

8  Plaintiff pleads declaratory relief has been functionally unavailable in the state forum on

9  the discrete federal issue presented: despite timely challenges and multiple procedural vehicles,

10  the court refused to hold a meaningful evidentiary hearing on who signed/authorized the Title

11  IV-D intervention and proceeded under the OAG's asserted premise that the court cannot

12  exclude the OAG or require verification. (Facts 58–63, 69–71).

13  **5. Anti-Injunction Act and narrow tailoring**

14  To the extent any requested injunction is construed as affecting a state proceeding,

15  Plaintiff pleads that § 1983 is an expressly authorized exception to the Anti-Injunction Act and

16  that the relief requested is narrowly tailored to prevent an ongoing violation of federal law—

17  limited to arrears confirmation/collection based on the disputed Title IV-D intervention until

18  sworn identification and an evidentiary hearing occur. (Facts 58–63, Prayer ¶ B).

19  **6. Domestic relations exception / abstention-like concerns**

20  Plaintiff expressly disclaims any request for this Court to grant a divorce, modify

21  custody, set support, or allocate marital property. Plaintiff's federal claims can be adjudicated

22  without determining domestic-relations merits because they challenge process: the absence of

23  notice/hearing, the acceptance of false judicial recitals in party-drafted orders, and the Title IV-D

1    agency's refusal to provide basic authentication/authority safeguards when challenged. (Facts

2    10–14, 26–31, 58–63).

3                              **7. Standing and immediacy**

4            Plaintiff alleges a real and immediate threat of injury: Munford's letter ruling confirms

5    arrears and awards a money judgment and execution; the Title IV-D agency has appeared and is

6    positioned to use coercive collection mechanisms; and the state tribunal has refused to adjudicate

7    the threshold authority/authenticity dispute on evidence, leaving Plaintiff exposed to imminent

8    enforcement without due process. (Facts 60–63, 69–72).

9              **8. Class-of-one Equal Protection and procedural comparators**

10           Plaintiff's "class of one" theory is aimed at ministerial/mandatory procedural baselines

11   (access to a docketed hearing on emergency motions, accurate orders reflecting what occurred,

12   mandatory recusal routing, and a stable attorney-of-record for enforcement actions), not

13   discretionary merits decisions. Plaintiff pleads intentional, irrational differential treatment with

14   no rational basis, supported by the fact pattern of unique procedural departures and the refusal to

15   adjudicate the Title IV-D authority issue that similarly situated litigants are ordinarily permitted

16   to litigate on evidence. (Facts 10–14, 26–31, 42–48, 65, 69–71).

17           Plaintiff pleads no rational basis for the differential treatment because: orders and recitals

18   were accepted despite facial inconsistencies and lack of evidentiary predicates; a no-evidence

19   MSJ was denied without evidence; and the court demanded that Plaintiff subpoena an "attorney-

20   of-record" while the OAG asserted interchangeability/contract signers and simultaneously

21   altered signature blocks, making compliance practically impossible. (Facts 52–56, 59–63, 69–

22   70).

29

1    These organized facts are pleaded to satisfy Rule 8's plausibility standard and to make

2    clear that this case seeks the narrowest federal intervention necessary to prevent imminent

3    constitutional injury and to allow a fair, impartial state tribunal to adjudicate the disputed Title

4    IV-D authority issue on a transparent record.

5    **VI. STATUTORY LIMITATION ON INJUNCTIVE RELIEF AGAINST JUDICIAL**

6    **OFFICERS**

7    Plaintiff recognizes that 42 U.S.C. § 1983 provides that, in an action against a judicial

8    officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not

9    be granted unless a declaratory decree was violated or declaratory relief was unavailable.

10    Plaintiff seeks declaratory relief in the first instance. Plaintiff further alleges, based on the facts

11    above, that declaratory relief has been functionally unavailable to him in the state forum as to the

12    discrete federal issue presented here—i.e., whether the State may invoke and enforce an arrears

13    "debt" through a Title IV-D intervention whose signer's identity and authority remain disputed—

14    because the state tribunal repeatedly refused to adjudicate authenticity/authority and proceeded

15    (or threatened to proceed) on the premise that there is "no statutory or legal mechanism" to

16    exclude the OAG even if the pleading was unauthorized. If this Court determines declaratory

17    relief alone is insufficient to prevent imminent constitutional injury, Plaintiff seeks narrowly

18    tailored prospective injunctive relief consistent with § 1983.

19    **VII. STATE FORUM INADEQUACY AND EXTRAORDINARY CIRCUMSTANCES**

20    Plaintiff has repeatedly attempted to obtain meaningful review through state procedures (

21    including: (a) emergency motions and objections in the trial court; (b) multiple petitions for writ

22    of mandamus in the Second Court of Appeals and the Texas Supreme Court; (c) repeated

23    motions to recuse and objections to ultra vires recusal processing under Texas Rule of Civil

30

1    Procedure 18a; (d) a Rule 12 challenge to Defendant Carter's authority to appear; (e) an original

2    SAPCR and emergency TRO request seeking declaratory relief that the March 14, 2024

3    "Temporary Orders" were void and seeking urgent medical/dental care for the youngest child; (f)

4    a no-evidence motion for summary judgment on the absence of family-violence evidence; (g) a

5    post-trial motion to strike the OAG's Title IV-D intervention and a request to produce the

6    alleged OAG attorney "Holly L. Hayes"; and (h) a January 26, 2026 emergency motion for stay

7    based on widespread "placeholder attorney" practices in the Texas electronic filing manager that

8    Plaintiff alleges prevent litigants from identifying a real attorney-of-record (Fact 62). Plaintiff

9    alleges these efforts have not provided a meaningful opportunity to remedy the constitutional

10   violations because the same core procedural defects and irregularities persisted, critical

11   authenticity/authority issues were never adjudicated on evidence, and the state tribunal

12   proceeded (or threatened to proceed) on the premise that there is "no statutory or legal

13   mechanism" to exclude the OAG even when the identity and authority of the purported signer

14   are disputed (Fact 63). As a result, Plaintiff faces imminent confirmation and enforcement of an

15   arrears "debt" without a meaningful hearing and without a realistic state-court mechanism to

16   prevent that injury. Plaintiff alleges that, as applied, these facts rebut any presumption that the

17   state proceedings provide an "adequate opportunity" to raise the discrete federal issue presented

18   here, because the state tribunal has repeatedly refused to adjudicate authenticity/authority on

19   evidence and the OAG has asserted there is "no statutory or legal mechanism" to exclude it even

20   if the pleading was unauthorized. Plaintiff further alleges that the cumulative pattern of

21   irregularities, refusal to provide a meaningful hearing, and continued pursuit of arrears leverage

22   in the face of timely-raised defects constitute bad faith/harassment and extraordinary

23   circumstances warranting narrowly tailored federal relief.

1    Plaintiff alleges that the state forum's inadequacy is not theoretical: when Plaintiff timely

2    withdrew assent and requested immediate review of the associate judge's report (Facts 19 and

3    19A), the court did not provide a de novo evidentiary hearing; instead, it proceeded on party-

4    drafted orders containing false recitals and later denied threshold authenticity/authority

5    challenges by coordinator email. Plaintiff further alleges that the OAG's position that there is

6    "no statutory or legal mechanism" to exclude it from participation, combined with

7    "interchangeable" signers and placeholder attorney identifiers (Facts 62–63), renders ordinary

8    state remedies illusory for the discrete federal question presented here—who is invoking the

9    State's enforcement power and with what authority.

10    Plaintiff alleges that, as applied, the state forum has not provided (and is not providing)

11    an adequate opportunity to raise and obtain a decision on the discrete federal issue presented

12    here—whether the State may invoke Title IV-D enforcement to impose/collect arrears through a

13    pleading whose signer's identity and authority are disputed—because: (a) the trial court

14    confirmed arrears by letter ruling before hearing the motion to strike (Facts 60–61); (b) the

15    motion to strike was denied by coordinator email rather than through a transparent evidentiary

16    order (Fact 71); (c) the court refused to produce the purported attorney-of-record (Hayes) and

17    instructed Plaintiff to subpoena her even while the OAG asserted that attorneys may appear

18    interchangeably and contract attorneys may sign pleadings (Facts 63, 69–70), creating a practical

19    Catch-22; and (d) the OAG refused to provide any sworn identification of who actually

20    signed/authorized the intervention while simultaneously altering signature blocks and attorney-

21    of-record information (Facts 59, 62–65, 74–76).

22    Plaintiff further pleads the Younger bad-faith/harassment exception because the

23    challenged enforcement posture is alleged to be the product of: (a) knowingly false violence

32

1    allegations and sworn misrepresentations used to obtain immediate dispossession/custody

2    leverage (Facts 2, 8A, 11–14, 56); (b) party-drafted "Temporary Orders" containing facially false

3    judicial recitals of a hearing, evidence, and agreement, which were allegedly rubber-stamped and

4    then used to enlist law enforcement to dispossess Plaintiff and sever daily contact with the

5    children (Facts 22–31); (c) a purported income-withholding order transmitted by counsel as

6    "from the Court" but never filed (Facts 33–34A); and (d) an allegedly forged/unauthorized Title

7    IV-D intervention used to initiate arrears leverage, followed by a refusal to authenticate and a

8    shifting of the attorney-of-record designation (Facts 35–38, 59, 62–63, 70). Plaintiff alleges these

9    acts were not good-faith litigation steps but coordinated misuse of state machinery to punish his

10   objections and preserve benefits obtained through disputed orders and filings.

11        Plaintiff further pleads extraordinary circumstances because the threatened injury is great

12   and immediate and cannot be cured by later appeal: (a) arrears confirmation and Title IV-D

13   collection tools (income withholding, credit reporting, license suspension, liens, and similar

14   coercive mechanisms) threaten imminent deprivation of wages and property without an

15   evidentiary hearing on whether the State's enforcement authority was lawfully invoked (Facts

16   60–63, 69–70); (b) Plaintiff's sworn Inventory and Appraisal reflects escalating unsecured

17   liabilities ($31,544.92) and a dramatic decline in business value/revenue that Plaintiff attributes

18   to the challenged dispossession and enforcement leverage (Fact 74); and (c) Plaintiff alleges

19   ongoing impairment of the parent-child relationship and loss of stability. Plaintiff alleges the

20   State's burden of providing minimal safeguards—a sworn identification of the actual

21   signer/decisionmaker and a short evidentiary hearing—is slight compared to the risk and

22   magnitude of erroneous deprivation.

1    Plaintiff alleges that the combination of (i) an unresolved authenticity/authority dispute

2    over who invoked the State's Title IV-D enforcement power, (ii) the OAG's asserted regime of

3    self-authentication and interchangeable/contract signers, (iii) the tribunal's refusal to adjudicate

4    that threshold issue on evidence, and (iv) imminent enforcement consequences constitutes a

5    structural breakdown of ordinary process—an "extraordinary circumstance" that warrants

6    narrowly tailored federal relief focused on process, not domestic-relations merits.

7                              **VII. CAUSES OF ACTION**

8    **COUNT I – Procedural Due Process (Fourteenth Amendment) – 42 U.S.C. § 1983**

9    Plaintiff realleges and incorporates by reference the factual allegations above as if fully

10   set forth here.

11   Plaintiff has protected liberty interests in the care, custody, companionship, and

12   management of his minor children, which the Supreme Court has recognized as a fundamental

13   liberty interest. See, e.g., *Troxel v. Granville*, 530 U.S. 57 (2000); *Santosky v. Kramer*, 455 U.S.

14   745 (1982). Plaintiff also has protected property interests in his home, personal property,

15   business equipment, wages, and freedom from the imposition and collection of a money

16   judgment/arrears "debt" without lawful process.

17   Defendants Munford and Thornton, acting under color of state law and through the

18   machinery of the state court and Title IV-D process, deprived Plaintiff (and continue to threaten

19   to deprive Plaintiff) of those liberty and property interests without constitutionally adequate

20   notice, a meaningful opportunity to be heard, or findings based on evidence. Plaintiff alleges, for

21   example: (a) on January 16, 2024—after offering a continuance because the courthouse was

22   effectively closed—Munford issued orders that immediately divested Plaintiff of custody,

23   property interests, and use of his residence and business without a hearing and under threat of jail

34

1    (Facts 11–13); (b) on March 14, 2024, the associate judge issued and "rubber-stamped"

2    materially false "Temporary Orders" drafted by Carter that recited a hearing and agreement that

3    did not occur, and that altered the prior associate judge's report (Facts 25–31), resulting in

4    Plaintiff's lockout and forced separation from the children (Facts 22–24); and (c) after Plaintiff

5    challenged the authenticity and authority of the June 28, 2024 Title IV-D intervention, the OAG

6    sought to proceed toward arrears confirmation while refusing to provide a sworn identification of

7    the purported signer and asserting there is "no statutory or legal mechanism" to exclude the OAG

8    even where the signer's identity and authority remain disputed (Facts 58–63, 69–71).

9          The deprivations and threatened deprivations were not random, isolated errors remediable

10    by ordinary post-deprivation procedures. Plaintiff alleges they reflect a repeated pattern of

11    procedural short-circuiting and irregularity (orders entered without hearings, findings, or lawful

12    notice; reliance on facially false recitals; refusal to require authentication or sworn identification

13    of the person invoking Title IV-D authority; and denial of Plaintiff's attempts to obtain a hearing

14    on those threshold issues. Under Mathews v. Eldridge, 424 U.S. 319 (1976), the private interests

15    at stake (parent-child relationship and deprivation of property through arrears enforcement) are

16    extraordinarily weighty; the risk of erroneous deprivation is high given the disputed

17    signature/authority and the documented "placeholder" practice Plaintiff identified (Fact 62); and

18    the governmental burden of basic safeguards (a short evidentiary hearing and a sworn

19    identification of the actual attorney-of-record) is minimal. Plaintiff therefore plausibly alleges an

20    ongoing procedural due-process violation and imminent constitutional injury.

21          As a direct and proximate result, Plaintiff has suffered and continues to suffer irreparable

22    injury and compensable damages, including separation from his minor daughters, impairment of

23    the parent-child bond, disruption of his home and business, and the imminent threat of a money

1    judgment for arrears and coercive enforcement (income withholding, credit reporting, and other

2    Title IV-D collection tools) without a meaningful hearing on whether the intervention and arrears

3    request were lawfully invoked in the first place. Plaintiff's economic losses include, at minimum,

4    the $31,544.92 in unsecured liabilities and the documented business-value decline estimated at

5    $532,299.00 to $887,166.00 described in Plaintiff's sworn Inventory and Appraisal (Fact 74), as

6    well as loss of access to (and/or loss of) business-critical computer/electronics equipment valued

7    at approximately $3,000.00, vehicle-related losses, and other personal property losses that

8    Plaintiff alleges flow from the challenged dispossession and enforcement leverage. Plaintiff

9    seeks prospective relief against the state official defendants to prevent ongoing constitutional

10    injury and seeks compensatory, nominal, and punitive damages against the private defendants for

11    the harms proximately caused by their joint action under color of law.

12          Plaintiff alleges the harm is continuing and compounding: because the challenged

13    dispossession and enforcement posture stripped him of stable access to his home, business

14    infrastructure, and his daughters, he has been forced to incur debt to remain housed and available

15    to parent; his home-based business revenue collapsed; and the arrears posture threatens

16    additional coercive tools (wage withholding, interception, credit reporting) that will further

17    impair his ability to work and to support his children. Plaintiff alleges this is precisely why pre-

18    deprivation process matters: once the parent-child relationship and a small business are disrupted

19    by state-backed coercion, the injury cannot be fully undone by later money damages or after-the-

20    fact appellate review.

21    **COUNT II – Denial of Access to the Courts (First and Fourteenth Amendments)**
22    **42 U.S.C. § 1983**
23

24    Plaintiff realleges and incorporates by reference the factual allegations above.

1       Plaintiff alleges that Defendants, acting under color of law and in concert with private

2    Defendants, repeatedly obstructed his access to a meaningful judicial forum to present time-

3    sensitive constitutional claims and to obtain a hearing on the authenticity and authority of the

4    Title IV-D intervention and related arrears assertions. Plaintiff alleges this obstruction occurred

5    through a pattern of acts including: (a) taking up matters on a day of courthouse closure and then

6    issuing dispositive orders without an evidentiary hearing (Facts 10–13); (b) accepting and

7    signing "Temporary Orders" drafted by a private attorney that falsely recited the occurrence of a

8    hearing, evidence, and agreement (Facts 25–31); (c) preventing Plaintiff from being heard on

9    emergency motions through ex parte communications and abrupt termination of proceedings

10   (Facts 42–45, 69–70); (d) using or permitting ultra vires administrative practices in the recusal

11   process (Facts 46–48); and (e) denying Plaintiff's motion to strike the OAG intervention by

12   coordinator email rather than through a transparent adjudicative process, while simultaneously

13   allowing arrears confirmation to proceed (Facts 70–71).

14      Plaintiff has suffered actual injury from this denial of access: he has been deprived of a

15   timely hearing and meaningful opportunity to contest ongoing deprivations and imminent

16   enforcement actions; he has been forced into repeated extraordinary appellate filings simply to

17   preserve basic procedural rights; and the continued lack of a forum for adjudicating the threshold

18   "who signed/with what authority" question leaves him exposed to continuing constitutional

19   injury—including the ongoing impairment of his relationship with his daughters and the

20   imminent confirmation/enforcement of arrears based on a disputed filing.

21      **COUNT III – Equal Protection ("Class of One") – 42 U.S.C. § 1983**

22      Plaintiff realleges and incorporates by reference the factual allegations above. Plaintiff

23   alleges a "class of one" equal-protection violation based on intentional, irrational differential

1    treatment from similarly situated litigants without a rational basis. See *Village of Willowbrook v.*

2    *Olech*, 528 U.S. 562 (2000).

3        Upon information and belief, similarly situated litigants in the 322nd District Court and

4    in Title IV-D child-support proceedings are ordinarily afforded baseline, non-discretionary

5    procedural protections: a docketed hearing on emergency motions; accurate written orders that

6    reflect what actually occurred; compliance with mandatory recusal-routing requirements; and a

7    stable, identifiable attorney-of-record for state enforcement actions. Plaintiff alleges that, unlike

8    those similarly situated litigants, he was subjected to a unique accumulation of procedural

9    departures (including: adjudication on a closure day followed by immediate dispossession

10   without a hearing (Facts 10–13); acceptance of party-prepared orders containing demonstrably

11   false recitals (Facts 25–31); ultra vires handling of recusal filings (Facts 46–48); and refusal to

12   adjudicate, on evidence, the authority and identity of the purported Title IV-D signer while

13   asserting that no mechanism exists to exclude the OAG (Facts 58–63, 69–71).

14       Plaintiff alleges this differential treatment was intentional and irrational and lacked a

15   rational basis. Plaintiff further alleges improper motive: to punish or silence his challenges

16   (including multiple mandamus filings), to preserve the benefits obtained through disputed orders

17   and alleged signature irregularities, and to insulate a broader "placeholder attorney" practice

18   from scrutiny (Fact 62). Plaintiff seeks prospective injunctive and declaratory relief to end this

19   unequal and arbitrary deprivation of access and process.

20   **COUNT IV – Conspiracy / Joint Action Under Color of Law – 42 U.S.C. § 1983**

21       Plaintiff realleges and incorporates by reference the factual allegations above.

22       Plaintiff alleges that Defendants Carter and Myers were not merely private litigants

23   "using the courts," but were willful participants in joint activity with state actors and state

1    enforcement machinery to accomplish results that could not lawfully be obtained through

2    ordinary adversarial process. Private conduct may be treated as action "under color of state law"

3    only where it is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937

4    (1982). The "fair attribution" inquiry asks whether (1) the deprivation was caused by the exercise

5    of a right or privilege created by the State, and (2) the private party acted together with, obtained

6    significant aid from, or conspired with state officials such that the challenged conduct is

7    chargeable to the State. *Id.*; see also *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545 (5th Cir. 2005);

8    *Dennis v. Sparks*, 449 U.S. 24 (1980). Plaintiff alleges more than the State's "mere approval of

9    or acquiescence in" private conduct; he alleges affirmative joint participation and significant aid.

10   See *Blum v. Yaretsky*, 457 U.S. 991, 1004–05 (1982). Plaintiff alleges a corrupt agreement /

11   meeting of the minds is plausibly inferred from the sequence and coordination of overt acts,

12   including: (a) Myers's sworn misrepresentations used to launch overlapping eviction/protective-

13   order/divorce proceedings and to trigger emergency court intervention (Facts 2–9); (b)

14   Munford's issuance of immediate dispossession and custody orders after offering a continuance

15   and without a hearing or findings (Facts 11–13); (c) Carter's presentation of unfiled,

16   party-drafted "Temporary Orders" containing false recitals of a hearing, evidence, and

17   agreement—at a setting noticed for Plaintiff's emergency motion—and the associate judge's

18   rubber-stamping of those orders while simultaneously ordering Plaintiff to sign them the same

19   day (Facts 25–31); (d) Myers's use of those orders (or the associate judge's report) to enlist law

20   enforcement to remove Plaintiff from the home and to sever day-to-day contact with the children

21   (Facts 22–24); and (e) Carter's alleged use of the name and purported signature of an OAG

22   attorney ("Holly L. Hayes") to file a Title IV-D intervention and to initiate arrears leverage,

23   followed by the OAG's refusal to provide sworn authentication, its quiet removal of Hayes from

1    signature blocks, and its assertion that there is no mechanism to exclude the OAG even if the

2    identity/authority of the signer is disputed (Facts 35–38, 59–63, 69–71). Plaintiff alleges these

3    overt acts, taken together, plausibly show coordinated use of state power (judicial orders, police

4    presence, and Title IV-D enforcement) to deprive Plaintiff of due process and to impose/collect a

5    coercive "debt" without lawful process.

6         As a direct and proximate result of this joint action, Plaintiff alleges he was forcibly

7    separated from his daughters, deprived of day-to-day parenting time and participation in their

8    lives, and subjected to lasting damage to the parent-child bond. Plaintiff further alleges that the

9    imposed and threatened arrears/collection regime chilled his ability to exercise parental rights

10   (because enforcement leverage is used to constrain litigation choices), disrupted his housing and

11   home-based business, and caused ongoing emotional and financial harm. Plaintiff alleges his

12   compensable economic losses include (at minimum) the $31,544.92 in unsecured liabilities and

13   the documented business-value decline estimated at $532,299.00 to $887,166.00 reflected in his

14   sworn Inventory and Appraisal (Fact 74), plus loss of access to business-critical

15   computer/electronics equipment valued at approximately $3,000.00, vehicle-related losses, and

16   other personal property losses described in Fact 76. Plaintiff seeks compensatory damages

17   (including economic loss, out-of-pocket costs, and emotional distress), nominal damages for the

18   constitutional deprivations, and punitive damages to deter future similar conduct, as permitted by

19   law.

20   **COUNT V – Declaratory Judgment and Prospective Injunctive Relief – 28 U.S.C. §§ 2201–**
21   **2202; Ex parte Young**
22
23        An actual, immediate, and justiciable controversy exists regarding whether Defendants

24   may confirm and enforce alleged child-support arrears against Plaintiff through a Title IV-D

25   intervention and arrears posture whose purported signer's identity and authority remain disputed;

1    whether Defendants may invoke state "self-authentication" provisions to bypass the threshold

2    question of who is acting for the State; and whether Defendants may continue to deprive Plaintiff

3    of parental and property interests through orders and enforcement leverage obtained without

4    constitutionally adequate process.

5        Plaintiff seeks declaratory relief declaring, among other things, that: (a) due process

6    requires a meaningful evidentiary hearing on the authority and identity of the person invoking

7    Title IV-D enforcement power when that authority is timely challenged; (b) the State may not

8    use "self-authentication" statutes as a shield to avoid litigating whether a disputed pleading was

9    actually filed by an authorized Title IV-D representative; and (c) the continuation of arrears

10   confirmation and enforcement without such process violates the Fourteenth Amendment.

11   Plaintiff also seeks prospective injunctive relief against Defendant Thornton (and those acting in

12   active concert with the OAG) to prevent imminent constitutional injury, including an injunction

13   prohibiting the OAG from seeking confirmation, collection, or enforcement of arrears in

14   Plaintiff's case based on the disputed intervention until the OAG provides sworn

15   authentication/authority information and Plaintiff is afforded a meaningful hearing.

16                               **VIII. PRAYER FOR RELIEF**

17       WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor

18   and grant the following relief:

19           i.     A declaration under 28 U.S.C. §§ 2201–2202 that the acts and threatened

20                  acts described above violate the Due Process Clause and related

21                  constitutional protections;

22           ii.    A temporary restraining order and preliminary injunction enjoining

23                  Defendant Thornton (and those acting in active concert with her) from

1             seeking, initiating, confirming, enforcing, collecting, or reporting child-

2             support arrears against Plaintiff in the underlying state matter based on the

3             disputed Title IV-D intervention unless and until: (i) the OAG files a

4             sworn declaration identifying the actual attorney who signed and

5             authorized the June 28, 2024 intervention (and any subsequent arrears

6             pleadings), including the attorney's Texas Bar number,

7             employment/contract status, and authority to act for the Title IV-D

8             agency; (ii) the OAG corrects the public attorney-of-record designation for

9             Plaintiff's case to reflect that identified attorney so Plaintiff can effect

10           service and, if necessary, compel testimony; and (iii) Plaintiff is afforded a

11           meaningful evidentiary hearing on those threshold authority/authenticity

12           issues before any arrears are confirmed or enforced;

13     iii.    Prospective declaratory relief against Defendant Munford limited to the

14           constitutional and procedural issues pleaded herein; and, only if (i)

15           declaratory relief is unavailable within the meaning of 42 U.S.C. § 1983

16           and (ii) an injunction is necessary to prevent imminent constitutional

17           injury, narrowly tailored injunctive relief consistent with § 1983

18           prohibiting further confirmation of arrears based on the disputed Title IV-

19           D intervention until the OAG provides sworn authentication and Plaintiff

20           is afforded an evidentiary hearing—without requiring this Court to decide

21           divorce, custody, or property merits;

22     iv.    Compensatory and nominal damages against Defendants Carter and

23           Myers, jointly and severally, in an amount to be determined at trial,

1    including but not limited to: (i) the documented business-value decline

2    estimated at $532,299.00 to $887,166.00 (Fact 74); (ii) at least $31,544.92

3    in unsecured liabilities incurred since being dispossessed (Fact 74); (iii)

4    approximately $3,000.00 in business-critical computer/electronics

5    equipment and related losses (Fact 74); (iv) vehicle-related losses and lost

6    personal property (Fact 76); (v) out-of-pocket expenses and consequential

7    economic losses proximately caused by the challenged conduct; and (vi)

8    emotional distress, loss of companionship, and other noneconomic

9    damages resulting from the deprivation of parental association and

10    property interests.

11    v.    Exemplary/punitive damages against Defendants Carter and Myers, in an

12    amount to be determined at trial, based on Plaintiff's allegations of willful

13    misconduct, fraud on the court, and reckless or callous indifference to

14    federally protected rights.

15    vi.    Such other and further relief as the Court deems just and proper. In the

16    alternative, if the Court determines that Younger abstention applies to any

17    portion of this action, Plaintiff requests a stay—not dismissal—of the

18    damages claims against the private defendants pending completion of the

19    state proceedings to preserve the statute of limitations.

20

21    ## IX. JURY DEMAND

22    Plaintiff demands a trial by jury on all issues so triable.

23

43

# X. VERIFICATION

I, Charles Dustin Myers, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on: 02/17/2026, DENTON COUNTY.

Charles Dustin Myers, Plaintiff (Pro Se)
1209 BLAIRWOOD DRIVE
FLOWER MOUND, TEXAS 75028
817-546-3693
CHUCKDUSTIN12@GMAIL.COM

44

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

CHARLES DUSTIN MYERS

**(b)** County of Residence of First Listed Plaintiff    **TARRANT**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS

JAMES B. MUNFORD, ET AL.

County of Residence of First Listed Defendant    **TARRANT**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
        THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government Plaintiff
- [ ] 2   U.S. Government Defendant
- [X] 3   Federal Question *(U.S. Government Not a Party)*
- [ ] 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*               *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance<br>[ ] 120 Marine<br>[ ] 130 Miller Act<br>[ ] 140 Negotiable Instrument<br>[ ] 150 Recovery of Overpayment & Enforcement of Judgment<br>[ ] 151 Medicare Act<br>[ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>[ ] 153 Recovery of Overpayment of Veteran's Benefits<br>[ ] 160 Stockholders' Suits<br>[ ] 190 Other Contract<br>[ ] 195 Contract Product Liability<br>[ ] 196 Franchise | **PERSONAL INJURY**<br>[ ] 310 Airplane<br>[ ] 315 Airplane Product Liability<br>[ ] 320 Assault, Libel & Slander<br>[ ] 330 Federal Employers' Liability<br>[ ] 340 Marine<br>[ ] 345 Marine Product Liability<br>[ ] 350 Motor Vehicle<br>[ ] 355 Motor Vehicle Product Liability<br>[ ] 360 Other Personal Injury<br>[ ] 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>[ ] 365 Personal Injury - Product Liability<br>[ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>[ ] 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>[ ] 370 Other Fraud<br>[ ] 371 Truth in Lending<br>[ ] 380 Other Personal Property Damage<br>[ ] 385 Property Damage Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881<br>[ ] 690 Other | [ ] 422 Appeal 28 USC 158<br>[ ] 423 Withdrawal 28 USC 157<br>**INTELLECTUAL PROPERTY RIGHTS**<br>[ ] 820 Copyrights<br>[ ] 830 Patent<br>[ ] 835 Patent - Abbreviated New Drug Application<br>[ ] 840 Trademark<br>[ ] 880 Defend Trade Secrets Act of 2016 | [ ] 375 False Claims Act<br>[ ] 376 Qui Tam (31 USC 3729(a))<br>[ ] 400 State Reapportionment<br>[ ] 410 Antitrust<br>[ ] 430 Banks and Banking<br>[ ] 450 Commerce<br>[ ] 460 Deportation<br>[ ] 470 Racketeer Influenced and Corrupt Organizations<br>[ ] 480 Consumer Credit (15 USC 1681 or 1692)<br>[ ] 485 Telephone Consumer Protection Act<br>[ ] 490 Cable/Sat TV<br>[ ] 850 Securities/Commodities/ Exchange<br>[ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation<br>[ ] 220 Foreclosure<br>[ ] 230 Rent Lease & Ejectment<br>[ ] 240 Torts to Land<br>[ ] 245 Tort Product Liability<br>[ ] 290 All Other Real Property | [X] 440 Other Civil Rights<br>[ ] 441 Voting<br>[ ] 442 Employment<br>[ ] 443 Housing/ Accommodations<br>[ ] 445 Amer. w/Disabilities - Employment<br>[ ] 446 Amer. w/Disabilities - Other<br>[ ] 448 Education | **Habeas Corpus:**<br>[ ] 463 Alien Detainee<br>[ ] 510 Motions to Vacate Sentence<br>[ ] 530 General<br>[ ] 535 Death Penalty<br>**Other:**<br>[ ] 540 Mandamus & Other<br>[ ] 550 Civil Rights<br>[ ] 555 Prison Condition<br>[ ] 560 Civil Detainee - Conditions of Confinement | [ ] 710 Fair Labor Standards Act<br>[ ] 720 Labor/Management Relations<br>[ ] 740 Railway Labor Act<br>[ ] 751 Family and Medical Leave Act<br>[ ] 790 Other Labor Litigation<br>[ ] 791 Employee Retirement Income Security Act | [ ] 861 HIA (1395ff)<br>[ ] 862 Black Lung (923)<br>[ ] 863 DIWC/DIWW (405(g))<br>[ ] 864 SSID Title XVI<br>[ ] 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>[ ] 870 Taxes (U.S. Plaintiff or Defendant)<br>[ ] 871 IRS—Third Party 26 USC 7609 | [ ] 893 Environmental Matters<br>[ ] 895 Freedom of Information Act<br>[ ] 896 Arbitration<br>[ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>[ ] 950 Constitutionality of State Statutes |
| | | | **IMMIGRATION**<br>[ ] 462 Naturalization Application<br>[ ] 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1   Original Proceeding
- [ ] 2   Removed from State Court
- [ ] 3   Remanded from Appellate Court
- [ ] 4   Reinstated or Reopened
- [ ] 5   Transferred from Another District *(specify)*
- [ ] 6   Multidistrict Litigation - Transfer
- [ ] 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §1983

Brief description of cause:
42 U.S.C. §1983 – Violation of Plaintiff's constitutional rights (due process) in state child support/custody proceedings by State actors.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**   Over $1,000,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   [X] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE    02/17/2026

SIGNATURE OF ATTORNEY OF RECORD    /s/ CHARLES DUSTIN MYERS

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

Clerk of Court
U.S. District Court
Northern District of Texas
Fort Worth Division

Dear Honorable Clerk:

Please accept the enclosed civil complaint, civil cover sheet, application to proceed in forma pauperis, and certificate of interested persons for filing.

I respectfully request that, once this case is docketed and a case number is assigned, I be granted electronic filing access (CM/ECF) as a pro se litigant. I anticipate filing an emergency motion and related service and summons materials and request electronic access to facilitate timely submission.

Please direct any notices or instructions regarding electronic filing registration to the email address listed below.

Email: CHUCKDUSTIN12@GMAIL.COM

Phone: 817-546-3693

Thank you for your assistance.

Sincerely,

Charles Dustin Myers
1209 Blairwood Drive
Flower Mound, Texas 75028
CHUCKDUSTIN12@GMAIL.COM
817-546-3693

On this 17th day of February, 2026

1

CHARLES DUSTIN MYERS
604 BLAIRWOOD DR.
FLOWER MOUND, TX 75028




Retail

U.S. POSTAGE PAID
FCM LG ENV
FLOWER MOUND, TX 750
FEB 17, 2026

76102

**$9.44**

S2324S501083-10

RDC 99



**CERTIFIED MAIL**

9589 0710 5270 3133 6147 69

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION
501 W. 10TH STREET
FORT WORTH, TX 76102

RECEIVED

FEB 20 2026

CLERK U.S. DISTRICT COURT.
NORTHERN DISTRICT OF TEXAS

