**AMENDED COMPLAINT**

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case - TXND (Rev. 9/25)

# UNITED STATES DISTRICT COURT

for the

Northern District of Texas

Fort Worth

| | | |
|---|---|---|
| Charles Dustin Myers | ) | Case No.   4:26-cv-00192-P-BJ |
| | ) | *(to be filled in by the Clerk's Office)* |
| | ) | |
| *Plaintiff(s)* | ) | |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) ) ) ) | Jury Trial: *(check one)*   **X**  Yes        No |
| **-v-** | ) ) | |
| James B. Munford; Ruth Anne Thornton; Cooper L. Carter; Morgan Michelle Myers | ) ) ) | |
| | ) ) | |
| *Defendant(s)* | ) ) | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) ) ) | |

## COMPLAINT FOR A CIVIL CASE

### I.     The Parties to This Complaint

#### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | CHARLES DUSTIN MYERS |
| Street Address | 1209 Blairwood Drive |
| City and County | Flower Mound, Denton County |
| State and Zip Code | Texas 75028 |
| Telephone Number | 817-546-3693 |
| E-mail Address | chuckdustin12@gmail.com |

#### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | James B. Munford |
| Job or Title *(if known)* | Judge, 322nd District Court; official capacity only |
| Street Address | Family Law Center, 200 E. Weatherford Street, 4th Floor |
| City and County | Fort Worth, Tarrant County |
| State and Zip Code | Texas 76196 |
| Telephone Number | 817-884-1427 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | Ruth Anne Thornton |
| Job or Title *(if known)* | Director of Child Support (IV-D Director); official capacity only |
| Street Address | Office of the Attorney General, Child Support Division, P.O. Box 12548 |
| City and County | Austin, Travis County |
| State and Zip Code | Texas 78711-2548 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | Cooper L. Carter |
| Job or Title *(if known)* | Private attorney; individual capacity only |
| Street Address | 2905 Lackland Road |
| City and County | Fort Worth, Tarrant County |
| State and Zip Code | Texas 76116 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | Morgan Michelle Myers |
| Job or Title *(if known)* | Private individual; individual capacity only |
| Street Address | 6641 Anne Court |
| City and County | Watauga, Tarrant County |
| State and Zip Code | Texas 76148 |
| Telephone Number | |
| E-mail Address *(if known)* | |

## II.  Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

x    Federal question                                  Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

42 U.S.C. section 1983; U.S. Const. amend. XIV

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff,  *(name)* _____ , is a citizen of the State of *(name)* _____ .

b.    If the plaintiff is a corporation

The plaintiff,  *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ , and has its principal place of business in the State of *(name)*

_____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant,  *(name)* _____ , is a citizen of the State of *(name)* _____ . Or is a citizen of *(foreign nation)* _____ .

    b.     If the defendant is a corporation

The defendant, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ , and has its principal place of business in the State of *(name)* _____ .

Or is incorporated under the laws of *(foreign nation)* _____ , and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

    3.     The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

_____

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

This action arises under 42 U.S.C. section 1983 and the Fourteenth Amendment. Plaintiff does not ask the Court to vacate the decree, modify custody or possession, recalculate support, erase arrears, or redivide property. Plaintiff alleges: (1) prospective relief against the Child Support Division official tied to continuing or threatened Title IV-D enforcement based on the June 28, 2024 intervention filed through Office Filer 914 on behalf of Holly Hayes; (2) declaratory relief against Munford limited to whether Plaintiff received constitutionally adequate process before the January 16, 2024 removal-before-hearing sequence, the later March 14, 2024 purported agreed temporary-order sequence, and the June 28, 2024 intervention were used against him in cause number 322-744263-23, plus the alternative Rule 18a and assignment-handling class-of-one theory; and (3) damages against Carter and Myers only on a narrow joint-action theory. See the attached pages filed 2026-04-06

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Plaintiff requests: (1) declaratory relief that Plaintiff did not receive constitutionally adequate process before the January 16, 2024 removal, the later March 14, 2024 purported agreed temporary-order sequence, and the June 28, 2024 intervention were used against him in cause number 322-744263-23; (2) declaratory and narrowly tailored prospective relief against the Child Support Division official preventing further Title IV-D enforcement based specifically on the June 28, 2024 intervention unless the actual signer, filer, reviewer, or authorizer is identified through a Hayes-specific, filing-specific identification process and Plaintiff is afforded a constitutionally adequate opportunity to challenge authenticity and authority; and

(3) declaratory relief on the Rule 18a and assignment-maintenance class-of-one theory; (4) compensatory, nominal, and punitive damages against Cooper L. Carter and Morgan Michelle Myers only to the extent proven on the pleaded joint-action theory; plus costs and any other relief allowed by law that does not require this Court to vacate, modify, or recalculate the Texas decree.

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        April 7, 2026

Signature of Plaintiff       /s/ *Charles Dustin Myers*

Printed Name of Plaintiff     Charles Dustin Myers

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

Print          Save As...          Add Attachment          Reset

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

| | |
|---|---|
| CHARLES DUSTIN MYERS, Plaintiff, v. JAMES B. MUNFORD, in his official capacity as Judge of the 322nd District Court of Tarrant County, Texas; RUTH ANNE THORNTON, in her official capacity as Director of Child Support (IV-D Director) for the Texas Office of the Attorney General; COOPER LEANNE CARTER, in her individual capacity; and MORGAN MICHELLE MYERS in her individual capacity, Defendants. | Civil Action No. 4:26-cv-00192-P-BJ |

**FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND DAMAGES RELIEF**

42 U.S.C. section 1983; 28 U.S.C. sections 1331, 1343, 1391

Plaintiff Charles Dustin Myers files this First Amended Complaint and alleges:

### I. NATURE OF THE ACTION

1. This is not a federal divorce appeal.

2. Plaintiff does not ask this Court to vacate the final decree signed on February 23, 2026 and file-stamped on February 24, 2026, to modify conservatorship or possession, to recalculate support, to erase the arrears judgment, or to redivide marital property. The relief requested here can be fully granted, if warranted, without declaring the decree void, without reweighing the family-law merits, and without directing the state court

1

how to adjudicate custody, possession, property, or support questions.

3. Plaintiff instead challenges a narrower constitutional sequence: a January 16, 2024 closure-day rendition through which Munford deprived Plaintiff of possession of the marital home, of his ordinary day-to-day care, custody, and control position with his children, and of related home-based business and property interests before completed notice-and-hearing process; a later March 6, 2024 lockout that made that displacement physical and total; later temporary-order documents generated after a March 14, 2024 setting Plaintiff says had been noticed on his emergency motion rather than on a new temporary-orders merits setting, and that were then treated as agreed despite a facially unsupported agreement recital and no clearly shown pre-March 2024 referral order in the current record; a failed private withholding effort; and then a June 28, 2024 Title IV-D intervention filed through Office Filer 914 on behalf of Holly Hayes, followed by state-backed arrears and withholding consequences without disclosure or other competent filing-specific identification of the actual signer or authorizer of that intervention when challenged.

4. Plaintiff seeks:

   - declaratory relief against Judge James B. Munford, in official capacity only, directed to ongoing post-decree use in Plaintiff's cause of the disputed intervention and related nontransparent process;

   - declaratory relief against Judge James B. Munford, in official capacity only, on a narrow class-of-one theory tied to concrete procedural departures in the ongoing court-administered handling of Plaintiff's cause;

   - prospective declaratory and injunctive relief against Ruth Anne Thornton, in official capacity only, directed to additional or continuing Title IV-D enforcement based on the disputed June 28, 2024 intervention and the nontransparent signer-identification process Plaintiff alleges was used in his own case; and

2

- compensatory, nominal, and punitive damages against Cooper L. Carter and Morgan Michelle Myers, in individual capacities only, based on a narrow joint-action theory.

5. Plaintiff seeks no damages from Munford or Thornton.

6. Plaintiff does not plead the Hayes issue as an adjudicated criminal finding already established by another tribunal.

7. Plaintiff alleges on information and belief that the June 28, 2024 intervention used Holly Hayes's identity, apparent signature authority, or filing authority without Hayes-specific authorization for that filing, thereby presenting Hayes as the authorizing OAG attorney for purposes of invoking Title IV-D power and later arrears and withholding consequences, and that Carter used, caused, procured, directed, requested, or materially participated in that false or unauthorized Hayes-based invocation after Carter's failed private withholding effort in order to give the disputed March 2024 temporary-order sequence apparent OAG-backed validity and enforcement leverage.

## II. PARTIES

8. Plaintiff Charles Dustin Myers is a natural person and citizen of Texas. His current mailing address is 1209 Blairwood Drive, Flower Mound, Texas 75028.

9. Defendant James B. Munford is sued in official capacity only. He is the judge of the 322nd District Court of Tarrant County, Texas.

10. Defendant Ruth Anne Thornton is sued in official capacity only as Director of Child Support (IV-D Director), or current equivalent Child Support Division official with direct supervisory responsibility over Title IV-D enforcement, for the Texas Office of the Attorney General.

11. Defendant Cooper L. Carter is sued in individual capacity only. She is a private attorney who appeared for Morgan Michelle Myers in the underlying Tarrant County case.

12. Defendant Morgan Michelle Myers is sued in individual capacity only. She is the opposing private party in the underlying Tarrant County case.

3

### III. JURISDICTION AND VENUE

13. This Court has federal-question jurisdiction under 28 U.S.C. sections 1331 and 1343 because this action arises under 42 U.S.C. section 1983 and the Fourteenth Amendment.

14. Plaintiff seeks prospective official-capacity relief against Thornton under Ex parte Young, 209 U.S. 123 (1908), based on an alleged ongoing violation of federal law through continuing or threatened Title IV-D enforcement. Plaintiff alleges ongoing injury-in-fact from wage-withholding exposure, arrears-collection exposure, and related enforcement consequences traceable to the challenged Title IV-D intervention and redressable by prospective relief directed to the Child Support Division official responsible for the enforcement machinery being used or threatened against him. Plaintiff does not rely on the Attorney General's general duty to enforce Texas law; Plaintiff relies on the specific enforcement connection of the Child Support Division official who directs or supervises the Title IV-D component, attorney-of-record usage, filer usage, withholding use, and ongoing enforcement posture challenged here.

15. Plaintiff seeks declaratory relief against Munford only on two narrow theories: a continuing procedural due-process challenge to ongoing post-decree use in Plaintiff's still-open cause of the June 28, 2024 intervention and related disputed temporary-order documents without threshold authenticity-and-authority procedures, with the January 16, 2024 deprivation and later findings refusal pleaded as context showing the continuing harm and lack of completed process; and an alternative class-of-one theory tied to concrete procedural departures in the ongoing court-administered handling of Plaintiff's recusal and assignment processes. Plaintiff does not ask this Court to direct the merits of divorce, custody, or support questions, and any declaration sought against Munford would define only whether those challenged sequences may continue to be treated as having supplied constitutionally adequate process, not alter custody, possession, support amounts, or the decree itself.

16. Plaintiff's claims against Carter and Myers are not pleaded as an appeal from the final decree. They are pleaded only on the narrower theory that those private defendants knowingly participated in a use of state machinery that, if proven, went beyond ordinary resort to courts, subpoenas, police presence, or favorable rulings. Plaintiff further alleges that Carter and Myers, acting for their own benefit, conspired or jointly acted with Munford and with OAG actors to use court orders, police-backed exclusion, and Title IV-D machinery to deprive Plaintiff of constitutionally adequate process, home possession, parental association, and related property and business interests.

17. Venue is proper in this District under 28 U.S.C. section 1391(b) because the events giving rise to these claims occurred primarily in Tarrant County, Texas, within the Fort Worth Division of the Northern District of Texas.

### IV. DIRECT RESPONSE TO THE MARCH 24, 2026 SCREENING ORDER

18. On March 24, 2026, the Court ordered Plaintiff to amend because the original pleading appeared to attack state-court proceedings under the guise of a civil-rights complaint and because several defendants appeared potentially immune.

19. This amended complaint addresses the concerns identified in that order.

20. Plaintiff does not ask this Court to review and reject the final decree as such.

21. Plaintiff instead pleads independent constitutional injuries from:

- the January 16, 2024 removal from the home and from Plaintiff's ordinary care, custody, and control position with his children without completed notice-and-hearing process;

- March 2024 temporary-order documents treated as agreed despite a facially unsupported agreement recital;

- Carter's May 9, 2024 withholding sequence;

- the June 28, 2024 OAG intervention filed through Office Filer 914 on behalf of Holly Hayes;

5

- the State's later refusal to provide Hayes-specific, filing-specific identification of the actual signer or authorizer of that filing;

- nontransparent recusal, assignment, and threshold-motion handling in Plaintiff's cause;

- the later arrears and withholding posture; and

- the continued use of that posture in a still-open cause.

22. Plaintiff also narrows the defendants and relief:

- Munford is sued for declaratory relief only;

- Thornton is sued for prospective relief only; and

- Carter and Myers are sued for damages only on a narrow joint-action theory.

23. To the extent abstention under Younger v. Harris, 401 U.S. 37 (1971), or Sprint Communications, Inc. v. Jacobs, 571 U.S. 69 (2013), is raised, Plaintiff alleges this federal suit seeks only threshold procedural safeguards and leaves the state court free to decide divorce, custody, support, property, and other family-law merits independent of the challenged intervention. Plaintiff does not seek ongoing federal supervision of the state case. He seeks only declarations fixing the legal rights and relations of the parties in a live controversy over whether the challenged sequence may continue to be used to impose or preserve coercive consequences against him in cause number 322-744263-23 without constitutionally adequate process, together with narrowly tailored prospective relief against future Title IV-D enforcement steps based on that same challenged intervention.

24. If Younger otherwise applies, Plaintiff pleads facts he contends support the recognized exceptions for bad faith, extraordinary circumstances, and inadequacy of the state forum. Plaintiff alleges those supporting facts include the actual sequence he received: a January 16, 2024 protective-order-cause setting followed by an interim out-of-home directive before completed notice-and-hearing process, a February 1, 2024 associate judge report, a February 9, 2024 emergency motion challenging that process, a March 14, 2024 setting

Plaintiff says was noticed on that emergency motion rather than on a new temporary-orders merits setting, later March 26, 2024 filing of the disputed report-and-order papering, a June 30, 2024 objection to the intervention, and a February 2026 strike-hearing sequence after arrears and withholding consequences had already matured. Plaintiff further alleges Myers initiated the December 2023 divorce and protective-order sequence as part of a pre-suit exclusion plan, later admitted material falsity in allegations used to launch that opening sequence, and that Plaintiff presented those points to Munford as support for his bad-faith and extraordinary-circumstances contentions.

25. Plaintiff further alleges that, despite repeated objections and repeated state-court requests directed to the June 28, 2024 intervention and the January 16, 2024 deprivation sequence, no court required threshold identification or other competent filing-specific authorization showing of who actually signed, reviewed, filed, or authorized the June 28 intervention before arrears and withholding consequences attached. Plaintiff further alleges Carter pursued the June 28, 2024 Title IV-D intervention after her failed private May 9, 2024 withholding effort did not succeed, that Burkley and other OAG actors later defended and relied on that same intervention without supplying Hayes-specific signer or authorizer identification, and that Munford denied the strike challenge without requiring Hayes to appear even though Hayes still appeared as an OAG attorney identity in other 322nd District Court Title IV-D matters. Plaintiff pleads those facts as supporting an inference of bad faith and extraordinary circumstances as to the June 28 intervention sequence. Plaintiff further alleges the March 30, 2026 findings expressly declined findings on both The Initial Decision to Remove Respondent from the Residence without a Completed Evidentiary Hearing and Findings Regarding Holly L. Hayes, the Title IV-D Intervention and the Office of the Attorney General.

26. Plaintiff further alleges that, as to these threshold constitutional grievances, the state processes actually available to him proved inadequate because the actors whose conduct he challenged often supplied no meaningful adversarial merits response on the specific January 16 and Hayes-authenticity questions, repeated original proceedings were disposed of through per curiam denials rather than merits resolution of those threshold issues, and the trial court repeatedly avoided findings or filing-specific signer-identification rulings even after the issues were squarely presented. Plaintiff pleads those facts as supporting his contentions of extraordinary circumstances and an inadequate opportunity to obtain timely state-court adjudication of the specific federal procedural claims pleaded here.

V. FACTUAL ALLEGATIONS

**A. The case began with the January 16, 2024 deprivation and continued into a disputed temporary-orders sequence**

27. Plaintiff and Morgan Michelle Myers were parties to divorce proceedings in Tarrant County cause number 322-744263-23. In December 2023, Myers personally initiated the divorce filing and a separate protective-order matter, cause number 322-744538-23. Plaintiff pleads that opening sequence as aimed at removing him from Anne Court, restricting his day-to-day access to the children, and securing support leverage before any clean merits baseline existed.

28. A January 15, 2024 Tarrant County District Courts announcement identified the 322nd District Court as closed for Tuesday, January 16, 2024 because of winter weather.

29. The January 16, 2024 setting arose from the protective-order cause, not from a clearly noticed divorce temporary-orders merits setting. Plaintiff further alleges the protective-order file included a December 28, 2023 order setting the January 16, 2024 hearing in that protective-order cause. Plaintiff further alleges Myers's divorce petition sought exclusive-residence and support relief and Myers's protective-order application

sought vacate relief, exclusive use of the residence, child-possession restraints, and support. Plaintiff pleads those December filings together as the opening sequence through which the later January 16 deprivation was sought and obtained.

30. Carter's later November 25, 2025 filing states that the parties appeared on January 16, 2024, the case was reset, and "[i]n the interim, Judge Mumford ordered that Movant Father was to vacate the marital home until the hearing date."

31. Plaintiff alleges this was a major deprivation by Munford before any completed evidentiary hearing on temporary relief. It removed him from the home, stripped him of his ordinary day-to-day care, custody, and control position with his children, and disrupted the home-based business and property interests tied to Anne Court before ordinary temporary-orders process was completed. Plaintiff further alleges that at the time he was functioning as a stay-at-home and work-from-home father and that the Anne Court residence was the operating base for both his day-to-day parenting and his home-based business. Plaintiff further alleges he contemporaneously objected in writing on January 23, 2024 that the January 16, 2024 removal occurred "without a fair opportunity" to be heard because of the weather-closure setting sequence.

32. Plaintiff further alleges that on March 6, 2024, while he was walking the children to school, Morgan Michelle Myers used the developing temporary-orders paper trail and existing exclusion posture to lock Plaintiff out of the Anne Court residence, and that responding officers recommended he leave after Myers showed them the signed associate judge report. Plaintiff pleads that March 6 lockout as the act that made the January 16, 2024 deprivation physical, total, and harder to unwind, because it cut off not only his residential access and daily parenting access but also his access to the home-based business infrastructure he says he needed to work and support the children.

**B. The February 1 report and the later March filing sequence**

9

33. On February 1, 2024 the parties signed an associate judge's report later filed on February 8, 2024.

34. That report stated that a typed written order conforming to the report would follow within twenty days, that Plaintiff's then-counsel was to prepare it, and that if agreement was not reached a motion to sign had to be filed and set.

35. Plaintiff alleges he withdrew assent almost immediately and filed an emergency motion on February 9, 2024 seeking reconsideration and vacatur. Plaintiff further alleges that in that motion and later preparatory notices he stated that the January 16 removal had been imposed without review of evidence, had shifted custody and residence before a completed hearing, and had disrupted both his work-from-home parenting arrangement and the home-based business he used to support the family.

36. Plaintiff further alleges the March 14, 2024 setting was arranged as a hearing on his emergency motion, that the current docket he reviewed does not show any filed response or countermotion to that emergency motion before the March 14 setting, and that he did not receive notice that the setting would instead be used as a temporary-orders merits hearing or as a substitute for the February 1 motion-to-sign process.

37. Plaintiff further alleges that at the March 14 setting Carter handed him an Agreed Associate Judge's Report that differed from the February 1 agreement and contained errors including altered dates and incorrect addresses. Plaintiff further alleges the current record he reviewed does not show a pre-March 2024 referral order in the divorce cause authorizing associate-judge temporary-orders adjudication. Plaintiff pleads that last point as an absence-based record allegation, not as absolute proof that no referral existed anywhere.

38. On March 14, 2024 temporary orders were later filed reciting that the court heard temporary-orders issues on February 1, 2024, heard evidence and argument, and that "[t]he parties have agreed to the terms of this order as evidenced by the signatures

10

below." Plaintiff further alleges the docket later reflected that the associate judge report, temporary orders, requests for findings and for the clerk's record, preparatory notices, and supporting affidavits were all filed together on March 26, 2024 rather than on March 14 itself. Plaintiff alleges those recitals were materially false or materially misleading because the March 14 setting had been arranged as a hearing on his emergency motion, the face of the filed order does not show his signature or his then-attorney's signature even though the order says agreement is evidenced by the signatures below, and Myers nonetheless retained the benefit of those orders, including continued exclusive possession of the home and day-to-day control of the children, through a long period in which Plaintiff alleges the case was prosecuted only sporadically and largely in response to Plaintiff's filings on the merits.

**C. Carter entered the case, used the disputed temporary-order documents, and then sought withholding**

39. Carter appeared for Morgan Michelle Myers by January 31, 2024.

40. Plaintiff does not allege Carter personally caused the January 16, 2024 removal event, because Carter did not yet appear in the case at that time.

41. Plaintiff alleges instead that, once Carter appeared, she knowingly used and extended the existing deprivation through the February 1 report and later March 2024 temporary-order documents.

42. On May 9, 2024 Carter emailed Plaintiff an Income Withholding Order and wrote that it was "agreed to by the parties and ordered by the Court" for his review.

43. In the same May 9, 2024 email Carter also stated that if she did not receive communication within ten days she would "be filing this document with the Court and submitting it to the Judge for signature."

44. Plaintiff objected that the IWO was defective.

11

45. Plaintiff alleges this mattered because Carter represented the IWO as already consistent with agreed and court-ordered relief while simultaneously describing it as something she would later file and submit for signature.

46. Plaintiff further alleges the current divorce-cause docket extract does not show an IWO or withholding filing around that May 2024 sequence.

**D. After Carter's failed private withholding effort, the case acquired a Title IV-D filing**

47. On June 28, 2024 the OAG filed a Title IV-D intervention in the divorce cause.

48. The wrapper for that filing states: FILER/REQUESTOR: OFFICE FILER 914 ON BEHALF OF HOLLY HAYES. Plaintiff further alleges the filing carried a face-of-document attorney-authentication conflict because Hayes appeared in the signature block, Burkley appeared in the manual certificate, and the automated filing path identified Office Filer 914 on behalf of Hayes.

49. The intervention sought confirmation and judgment on arrears and requested payment and income withholding to liquidate that judgment.

50. The intervention also requested current support relief and asked that all support be withheld from disposable earnings.

51. Plaintiff alleges the June 28 intervention materially changed the case because it converted the disputed March 2024 temporary-order and support sequence into an arrears and enforcement posture backed by state authority.

52. Plaintiff further alleges the intervention followed the same practical objective as Carter's failed private IWO effort and permitted the same arrears-and-withholding leverage to be pursued through Title IV-D machinery after Carter's private effort did not succeed. Plaintiff further alleges that, at the pleading stage, the timing and function of the intervention plausibly support the inference that the Hayes-presenting filing was used to give state-backed validity, leverage, and collection consequences to the disputed March 2024 temporary-order sequence Carter had already been using.

12

**E. The June 28 filing used Hayes's identity, but the State never identified who actually signed or authorized it**

53. The June 28 intervention used Holly L. Hayes as the attorney tied to the filing while the manual certificate identified Choya Burkley as attorney of record.

54. Plaintiff later challenged whether the intervention had in fact been signed, reviewed, filed, or authorized by an identifiable attorney or other authorized state representative.

55. Plaintiff alleges the challenged June 28 signature mechanism does not match the recurring Hayes-specific H5H / Holly Hayes stamp mechanism seen in sampled comparator Hayes filings. Plaintiff alleges the sampled genuine Hayes filings use recurring stamp-annotation structures tied to Holly Hayes and the same embedded image payload, while the challenged June 28 filing does not.

56. Plaintiff further alleges that every sampled comparator Hayes filing he reviewed in the current record used that recurring Hayes-specific stamp mechanism, making the June 28, 2024 intervention the outlier among those sampled Hayes filings.

57. Plaintiff alleges the challenged filing instead used Adobe Fill & Sign structures tied to ADBE_FillSign, FillSignData, and AssetID(GlobalSignatureAsset1), with a different embedded signature-image payload than the sampled Hayes filings.

58. Plaintiff does not plead those forensic points as proof of which person inserted the challenged signature asset.

59. Plaintiff pleads them as a concrete authenticity problem that required filing-specific signer-identification or authorization proof before the filing was used to support additional state-backed enforcement. Plaintiff further alleges that, in the absence of competent Hayes-specific authorization proof, the mismatch supports an inference that someone other than Hayes inserted, caused, or supplied the challenged signature asset.

**F. The OAG answered late, defended the filing generically, and still did not identify the actual signer or authorizer**

13

60. The first located OAG trial-court answer was not filed until January 7, 2026, after the December 10, 2025 final hearing had already occurred.

61. On January 29, 2026 the OAG filed a first amended answer asserting, among other things, that a Title IV-D pleading did not require further authentication, that assistant attorneys general "may appear interchangeably," and that the OAG may "contract with private attorneys" for "reviewing and signing of pleadings" in Title IV-D cases.

62. The same January 29, 2026 answer also stated there was "no statutory or legal mechanism" that would permit exclusion of the OAG from the case.

63. Plaintiff alleges the January 29, 2026 answer still did not identify the actual attorney or authorized state representative who signed, reviewed, filed, or authorized the June 28, 2024 intervention through any Hayes-specific, filing-specific identification process.

64. Plaintiff further alleges the January 29, 2026 answer retroactively asserted that the OAG had already appeared at the December 10, 2025 final hearing through an unnamed assistant attorney general and had provided an updated payment record that led to arrears confirmation. Plaintiff pleads that sequence as further due-process injury because, on his allegations, arrears were confirmed at the final-hearing stage before his February 2026 strike challenge to the June 28 intervention was actually heard and before any Hayes-specific, filing-specific identification of the actual signer or authorizer was required.

65. Plaintiff alleges that answer strategy was generic and office-wide, not Hayes-specific, and attempted to answer a filing-specific authorization challenge with interchangeability and contract-attorney theories rather than any Hayes-specific, filing-specific identification of who actually signed, reviewed, filed, or authorized the June 28 intervention. Plaintiff further alleges that, as pleaded here, the January 29, 2026 answer functioned as an office-wide defense of the same June 28 filing and arrears-and-withholding posture that Carter had already tried to obtain privately, thereby helping preserve the disputed March

14

2024 temporary-order sequence from threshold scrutiny rather than identifying the actual signer or authorizer.

**G. The service-contact and attorney-identity trail remained unstable**

66. Plaintiff later obtained a Tyler filing-history and service-contact-history artifact showing HOLLY HAYES Attach 06/30/2024 and HOLLY HAYES Detach 04/23/2025.

67. Plaintiff alleges the current record still does not show a formal trial-court withdrawal, substitution, or nonrepresentation filing explaining the shift from the Hayes-based intervention to the later Burkley-based answer papers.

68. Plaintiff further alleges the same office-filer pathway later appeared on behalf of Choya Burkley and that later notice routing in this same cause continued to use Hayes-based identities rather than curing the original ambiguity. Plaintiff further alleges an October 11, 2024 automated certificate of eService in this same cause still listed HOLLY HAYES at csd-filer-914@texasattorneygeneral.gov.

69. Plaintiff alleges that the Hayes-to-Burkley shift, combined with the lack of Hayes-specific identification of who actually signed or authorized the filing, reinforced the due-process problem rather than curing it and supports an inference that Hayes's name was used as the filing identity for the intervention without later willingness to stand behind Hayes as the actual signer or authorizer through any identification process tied to this filing.

**H. Public-record materials later supplied only a contingent-worker explanation, not filing-specific authorization proof**

70. After the decree Plaintiff obtained public-records materials concerning the OAG explanation.

71. A March 26, 2026 Comptroller response transmitted through public-records Request 101659 stated that Holly L. Hayes and Brandon E. Manus were classified in the CAPPS database as contingent workers and that no other information was available for them in that payroll and compensation database.

15

72. Plaintiff further alleges that newer personnel-record materials identified many other OAG attorneys tied to this case, including the other attorneys on the June 28, 2024 intervention signature block and the later January 29, 2026 answer roster, while still not producing a comparable Hayes-specific contract, assignment, authorization, supervision, or identification record tying Hayes to the June 28, 2024 intervention.

73. Plaintiff does not plead those public-records materials as proof Hayes was fictitious or was never a licensed lawyer. Plaintiff alleges instead that Hayes appeared to be a real lawyer but remained the anomalous figure on the challenged June 28 intervention because the State still did not produce filing-specific proof that Hayes personally signed or authorized that intervention.

74. Plaintiff also alleges publicly produced bar-profile materials showed Hayes had changing OAG company-field entries in 2024 and did not themselves supply filing-specific authorization for the June 28 intervention. Plaintiff pleads the public-record materials as support for the proposition that the State still has not supplied a competent Hayes-specific authorization or identification record for the June 28 intervention.

75. Plaintiff further alleges, on information and belief, that in Plaintiff's own case the Child Support Division invoked Title IV-D authority through nontransparent attorney-of-record and filer designations, then shifted to different named attorneys and generic contingent-worker or contract-attorney explanations when the filing was challenged, without giving Hayes-specific, filing-specific identification of who actually signed, reviewed, filed, or authorized the June 28, 2024 intervention.

76. Plaintiff bases that case-specific allegation on the combination of the June 28 wrapper, Carter's failed May 9 IWO effort followed by the near-immediate June 28 state-backed intervention seeking the same relief, the later Burkley-centered answers, the Hayes attach/detach trail, the contingent-worker response, Hayes's anomalous status in later public-record materials, and the continued defense and use of the same filing after

16

Plaintiff challenged it. Plaintiff further alleges the same record permits an inference of coordinated use of state process: Myers initiated the exclusion track, Munford imposed the interim removal before completed process, Carter later converted that displacement into purported agreed temporary-order papering and then pursued the same withholding objective first privately and then through Title IV-D machinery, the June 28 intervention plausibly served to give OAG-backed validity and enforcement force to that disputed March 2024 papering, and all participants retained the benefit of the resulting exclusion-and-enforcement posture after the threshold defects were repeatedly raised.

**I. Plaintiff also alleges concrete procedural departures in recusal, assignment, and motion handling**

77. Plaintiff alleges Texas Rule of Civil Procedure 18a(e) supplied a uniform, non-discretionary baseline for any litigant invoking recusal in his cause: the clerk was to immediately deliver the filed motion, response, and referral order, and the filed materials were to be transmitted as filed.

78. Plaintiff further alleges Rule 18a(f) supplied a second neutral baseline: once a timely recusal motion was filed before evidence, the respondent judge was to take no further action absent good cause stated in writing or on the record.

79. On October 8, 2024, court coordinator Lindsey Baker sent the parties only Correspondence.pdf and Myers-Order of Referral.pdf in connection with Plaintiff's recusal filing, not the motion packet Plaintiff says he submitted.

80. Plaintiff immediately objected that the transmitted packet omitted his affidavit and exhibits and was materially smaller than the submission he says he filed.

81. Plaintiff further alleges the initial transmission did not include the motion packet as filed and that the omission was not corrected until after he objected.

82. On October 9, 2024, after Plaintiff objected, Baker forwarded an amended order of referral and stated that the recusal motion was being sent as three attachments because of

17

its length.

83. Plaintiff further alleges that, on April 29, 2025 and again on September 9, 2025, Baker forwarded correspondence-and-referral packets to the regional process without attaching the underlying recusal motion itself.

84. Plaintiff contemporaneously objected on September 9, 2025 that the first recusal packet had been modified and that later packets omitted the motion altogether.

85. Plaintiff further alleges that, on March 17, 2025, he raised that former assignment Judge Lee Gabriel's assignment still appeared active, Baker said she would address it, and a formal order terminating the assignment was not signed until March 19, 2025 even though the recusal denial had been signed on November 7, 2024.

86. Plaintiff alleges that the incomplete October 8 transmission, the October 9 correction only after objection, the later 2025 referral packets omitting the motion entirely, and the delayed assignment termination were concrete departures from the neutral Rule 18a and assignment-administration baselines applicable to his cause.

87. Plaintiff does not plead those facts as proof that every adverse ruling was unconstitutional.

88. Plaintiff pleads them only as support for a narrow comparator-based claim that the procedural handling of his cause departed from rule-bound court administration in a concrete and irrational way.

**J. Plaintiff repeatedly demanded threshold identification, but no tribunal required it before arrears and withholding consequences attached**

89. Plaintiff directly challenged the June 28 intervention beginning with a June 30, 2024 objection and continuing through a May 22, 2025 motion to strike, a December 29, 2025 first amended motion to strike, a February 2, 2026 request to produce Holly Hayes, mandamus filings, rehearing filings, and postjudgment filings.

90. Plaintiff requested production of Holly Hayes for the February 9, 2026 hearing and directly challenged the signatory and authority of the June 28 intervention.

91. On February 12, 2026, Munford denied Plaintiff's motion to strike without requiring Hayes to appear, without requiring the OAG to identify the actual signer or authorizer of the June 28 filing through any Hayes-specific, filing-specific identification process, and while Hayes still appeared as an OAG attorney identity in other 322nd District Court Title IV-D matters.

92. Plaintiff alleges that no state tribunal required the State to identify which attorney or authorized state representative actually signed, reviewed, filed, or authorized the June 28 intervention through any filing-specific identification process before arrears and withholding consequences attached, and that the arrears-confirmation sequence was allowed to proceed to judgment before the strike challenge to that intervention was actually heard.

93. Plaintiff further alleges he pursued eight mandamus proceedings or related original proceedings in the Texas appellate courts, including cause numbers 24-0395, 25-0361, 25-0367, 25-0378, 25-0426, 25-0458, 25-0861, and 26-0117, yet no state tribunal required filing-specific identification of who actually signed or authorized the June 28 intervention or required findings on whether the January 16, 2024 out-of-home removal occurred without a completed evidentiary hearing. Plaintiff pleads those unsuccessful efforts not as substitute merits review here but as further support that the threshold due-process and signer-identification issues remained unresolved despite repeated efforts to obtain a substantive state ruling on them.

94. After the decree, Plaintiff timely filed a March 6, 2026 request for findings of fact and conclusions of law and a March 26, 2026 notice of past-due findings. Plaintiff further alleges his first amended motion for new trial expressly requested findings on best interest and parental rights, in addition to the threshold process issues pleaded here. On

19

March 30, 2026, more than two years after the January 16, 2024 removal sequence, the trial court's findings expressly declined findings on The Initial Decision to Remove Respondent from the Residence without a Completed Evidentiary Hearing and on Findings Regarding Holly L. Hayes, the Title IV-D Intervention and the Office of the Attorney General. Plaintiff then filed a same-day Rule 298 request seeking additional findings, including who signed or authorized the June 28 intervention and what pleading, motion, or legal basis supported the arrears money judgment. Plaintiff further alleges that, even before those findings, Munford had directed Carter on December 9, 2025 to prepare the order denying Plaintiff's no-evidence motion and had directed on January 12, 2026 that the typed final order conforming to the divorce ruling be prepared by Carter, which Plaintiff pleads not as independent federal wrongs by themselves but as further support that Carter remained integrated into the same state-backed temporary-order and enforcement sequence after the threshold defects had been squarely raised.

## K. The final decree confirmed arrears and withholding consequences and left the same cause live for enforcement

95. The final decree confirmed that Plaintiff was in child-support arrears in the amount of $17,376.31 as of November 30, 2025.

96. The decree rendered judgment for that arrearage and ordered monthly arrears payments.

97. The decree further stated that the withholding order authorized therein would include the arrears payments and that other collection methods authorized by law were not prohibited.

98. The decree ordered withholding from Plaintiff's earnings for current support, stated that an Income Withholding for Support was signed the same date, retained jurisdiction over support arrearages and related enforcement, directed the clerk to deliver a certified copy of the withholding order on request of, among others, the Title IV-D agency, reserved clarification and enforcement authority, and authorized execution and writs necessary to

20

enforce the judgment.

99. Plaintiff alleges the challenged June 28 intervention was therefore allowed to mature into an ongoing arrears-and-withholding posture before the identity of the actual signer or authorizer was established through any filing-specific identification process.

**L. Plaintiff's injuries are continuing and independent of any request to undo the decree**

100. Plaintiff alleges an ongoing or threatened federal injury to wages, money, credit, and property interests from additional or continuing Title IV-D enforcement and related withholding consequences, including the live arrears-and-withholding posture carried forward in the decree and the decree's express authorization of further collection methods authorized by law.

101. Plaintiff further alleges he suffered separate actual injuries from the January 16, 2024 deprivation, the March 6, 2024 lockout, the later disputed temporary-order documents, the later recusal-delay sequence, and the resulting enforcement leverage, including loss of use of the home; loss of daily possession with his children; loss of his ordinary care, custody, and control position with the children pending later proceedings; inability to work from home at full capacity; loss of access to specialized internet, computing hardware, and other home-based business infrastructure; increased living costs and debt incurred to remain near the children; at least $31,544.92 in unsecured liabilities later attributed in Plaintiff's sworn October 15, 2025 inventory to the abrupt removal from the home; business-value decline there estimated in that inventory at approximately $532,299 to $887,166; and emotional distress if proven. Plaintiff alleges those injuries began before any completed evidentiary hearing on the home-and-children deprivation sequence and were then prolonged by later disputed March 2024 temporary-order documents and later state-backed enforcement leverage. Plaintiff further alleges the March 14, 2024 denial sequence itself acknowledged the business-access problem by directing him to identify technology needed from the residence.

102. Plaintiff seeks federal relief only to prevent further use of the challenged process and to recover damages from the non-immune private defendants if the facts prove the narrow joint-action theory pleaded here.

## VI. COUNT ONE - PROCEDURAL DUE PROCESS / EX PARTE YOUNG AGAINST THORNTON FOR PROSPECTIVE RELIEF

103. Plaintiff incorporates the preceding allegations.

104. Count One rests on three components: (1) protected property interests in wages, money, and freedom from additional state collection and withholding; (2) ongoing or threatened state deprivation through Title IV-D enforcement mechanisms being used or carried forward against Plaintiff; and (3) constitutionally inadequate process because the challenged intervention was used as an enforcement predicate without Hayes-specific, filing-specific identification of the actual signer or authorizer when Plaintiff challenged it.

105. Thornton, or her successor, is the proper prospective-relief defendant not because of title alone, but because Texas publicly identifies that office as Director of Child Support (IV-D Director) for the Office of the Attorney General, and the Child Support Division she leads or oversees is the Title IV-D component that Plaintiff alleges filed the June 28, 2024 intervention through Office Filer 914 on behalf of Hayes, later appeared through Burkley-centered answer papers, supplied or maintained the arrears-and-withholding position used in the cause, and is expressly identified in the decree as an entity that may request clerk delivery of the withholding order and use the same live enforcement machinery carried forward in the decree, including income withholding and other arrears-collection steps authorized by law.

106. Plaintiff alleges the process was constitutionally inadequate because:

- the June 28, 2024 intervention was used to invoke Title IV-D enforcement without disclosure and competent filing-specific identification of the actual attorney or

authorized state representative who signed, reviewed, filed, or authorized it when challenged;

- the OAG defended the intervention through general self-authentication, interchangeability, and contract-attorney theories that preserved the challenged June 28 filing and its enforcement consequences while still withholding the identity of the actual signer or authorizer;

- the State supplied only a contingent-worker explanation later, not a Hayes-specific authorization record;

- the state court denied Plaintiff's challenge without requiring any Hayes-specific, filing-specific identification of the actual signer or authorizer; and

- the intervention was then allowed to mature into arrears, withholding, and continuing enforcement consequences.

107. Plaintiff further alleges, on information and belief, that the challenged process was not limited to a single isolated filing event within his own cause, as shown by the Office Filer 914 pathway, the Hayes-to-Burkley shift, the contingent-worker explanation, and repeated Hayes notice routing in that same cause. Plaintiff does not plead any broader policy claim or seek relief extending beyond future enforcement steps taken against him in his own case.

108. Plaintiff does not ask this Court to decide who committed a crime, to determine the ultimate validity of the divorce decree, or to recalculate support.

109. Plaintiff asks only for a declaration and narrowly tailored prospective relief against the proper Title IV-D enforcement official barring implementation, application, request, or enforcement of additional Title IV-D measures against him that use the June 28, 2024 intervention as an enforcement predicate unless and until the actual signer, filer, reviewer, or authorizer of that intervention is identified through a Hayes-specific, filing-specific identification process and Plaintiff is afforded a constitutionally adequate

23

opportunity to challenge authenticity and authority before that particular intervention is used as the predicate for additional enforcement action against him. Plaintiff does not ask this Court to direct any state judge how to decide the family-law merits or to prohibit relief that is independent of the challenged Title IV-D intervention itself.

## COUNT II - 42 U.S.C. section 1983 DECLARATORY RELIEF AGAINST MUNFORD IN OFFICIAL CAPACITY ONLY

110. Plaintiff incorporates the preceding allegations.

111. Plaintiff alleges an ongoing case or controversy exists because cause number 322-744263-23 remains open for post-decree proceedings and because the challenged process and threshold disputes could recur in that cause. Plaintiff further alleges the March 30, 2026 findings refusal left unresolved in that same cause both the January 16 removal issue and the Hayes / OAG signer-identification issue.

112. Plaintiff does not seek damages from Munford. Plaintiff does not seek an injunction telling Munford how to decide divorce, custody, property, support, or recusal merits, and does not seek any order reopening, vacating, rehearing, or revising any state-court ruling.

113. Plaintiff seeks only a declaration under 28 U.S.C. section 2201 fixing the parties' rights and legal relations in the live controversy over whether Plaintiff received constitutionally adequate process before the January 16, 2024 removal-before-hearing sequence deprived him of home possession, his ordinary care, custody, and control position with his children, and related property interests, and whether the later March 14, 2024 purported agreed temporary-order sequence and the June 28, 2024 intervention supplied or retroactively cured that missing process. Plaintiff further seeks a declaration in the same live controversy over whether those disputed sequences may continue to be treated in cause number 322-744263-23 as having supplied due process. Plaintiff does not seek a declaration that would itself alter custody, possession, support amounts, or the decree.

24

114. Plaintiff further alleges the challenged process includes the later refusal to make findings on The Initial Decision to Remove Respondent from the Residence without a Completed Evidentiary Hearing and on Findings Regarding Holly L. Hayes, the Title IV-D Intervention and the Office of the Attorney General while the same cause remained open for post-decree proceedings.

115. Plaintiff pleads this count on the narrow theory that the January 16 removal-before-hearing sequence deprived him of possession of the marital home, of his ordinary care, custody, and control position with his children, and of related home-based business and property interests before any completed evidentiary hearing, and that the later disputed March 14 temporary-order sequence and June 28 intervention did not cure that lack of process or convert it into constitutionally adequate process. Plaintiff further pleads that continued reliance in the still-open cause on those sequences, without disclosure of the actual signer, filer, reviewer, or authorizer of the June 28 intervention through a Hayes-specific, filing-specific identification process and without a constitutionally adequate opportunity to challenge authenticity and authority, is inconsistent with the Fourteenth Amendment. This count is not a request that this Court revise or direct the underlying family-law merits or issue a retrospective merits ruling about the entire state process.

116. Plaintiff seeks only entry of that declaration itself, not ongoing federal monitoring of later state-court compliance, not supervision of the state docket, and not any federal order directing how the state court must administer later proceedings.

## COUNT III - ALTERNATIVE CLASS-OF-ONE EQUAL PROTECTION AGAINST MUNFORD IN OFFICIAL CAPACITY ONLY

117. Plaintiff incorporates the preceding allegations.

118. Plaintiff alleges an ongoing case or controversy exists because the same cause remains open for post-decree proceedings and because the challenged recusal and assignment

procedures could recur in that cause.

119. Plaintiff does not seek damages from Munford.

120. Plaintiff does not seek an injunction telling Munford how to decide divorce, custody, property, support, or recusal merits.

121. Plaintiff pleads this count only to the extent the challenged acts are administrative or ministerial distortions in the Rule 18a transmission and assignment chain, not adjudicative merits rulings. Plaintiff does not allege that deciding whether to recuse, or how to rule on any family-law question, is itself the federal wrong.

122. Plaintiff alleges Rule 18a(e) and 18a(f) supplied the neutral baseline for similarly situated recusal movants in his cause: clerk-driven delivery of the filed motion, response, and referral order; transmission of the motion as filed; and no further action absent written or recorded good cause. Plaintiff further alleges the assignment orders themselves supplied a baseline that an assignment remained operative until formally terminated and therefore required prompt cleanup once the assigned judge had ruled.

123. Plaintiff alleges similarly situated recusal movants are those whose motions are transmitted and maintained through the ordinary clerk-driven Rule 18a process.

124. Plaintiff relies on the following alleged departures from that baseline:

 - the October 8, 2024 transmission of only two files, Correspondence.pdf and Myers-Order of Referral.pdf, instead of the recusal packet Plaintiff says he filed;

 - the October 9, 2024 amended transmission splitting the motion into three parts only after Plaintiff objected that the first packet omitted the affidavit and exhibits and materially differed in size from his filed submission;

 - the April 29, 2025 and September 9, 2025 coordinator-routed referral packets that forwarded only correspondence and referral orders without attaching the underlying motion; and

26

- the March 19, 2025 formal termination of Gabriel's assignment only after Plaintiff raised on March 17, 2025 that the assignment still appeared active despite the November 7, 2024 recusal denial.

125. Plaintiff alleges no written or recorded good cause was supplied for those departures and that the same distorted handling recurred even after he objected.

126. Plaintiff alleges there was no rational basis for substituting a coordinator-routed, altered, incomplete, or motion-omitting transmission path for the clerk-driven Rule 18a path prescribed for similarly situated recusal movants.

127. Plaintiff expressly does not contend that every individualized judicial decision can be attacked under a class-of-one theory.

128. Plaintiff pleads this count only as a narrow equal-protection challenge to alleged irrational singling out in the court-administered Rule 18a and assignment handling of his cause. The challenged acts are the altered or incomplete transmission path, the motion-omitting referral path, and the delayed assignment-termination sequence, not the substance of any recusal ruling.

129. Plaintiff seeks only a declaration under 28 U.S.C. section 2201 that the Rule 18a transmission and assignment-maintenance path used in his cause materially departed without rational basis from the neutral baseline applicable to similarly situated recusal movants, and that continued use of the same unequal path against him in cause number 322-744263-23 is inconsistent with the Fourteenth Amendment. Plaintiff seeks entry of that declaration itself, not ongoing federal monitoring of later state-court compliance.

**COUNT IV - 42 U.S.C. section 1983 DAMAGES AGAINST CARTER ON A NARROW JOINT-ACTION THEORY**

130. Plaintiff incorporates the preceding allegations.

131. Plaintiff does not allege that ordinary resort to litigation, favorable rulings, subpoenas, or ordinary advocacy is enough for 42 U.S.C. section 1983 liability.

27

132. This count is pleaded only under the narrow joint-participation principles recognized in Dennis v. Sparks, 449 U.S. 24 (1980), and Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982). Plaintiff instead pleads this count only on the narrower theory that Carter knowingly participated, together with Munford and OAG actors, in use of state processes in a manner that, if proven, went beyond ordinary private advocacy and deprived Plaintiff of constitutionally adequate process. The challenged act is not merely that Carter later benefited from judicial rulings; it is that she allegedly obtained or preserved the desired exclusion, disputed March 2024 temporary-order leverage, support, and enforcement consequences through state implementation of her position without the ordinary independent notice, motion-to-sign, hearing, and signer-identification safeguards that would otherwise have interposed neutral state judgment between Carter's requests and the deprivation.

133. The specific conduct Plaintiff relies on against Carter includes:

- knowingly using and extending the existing January 16, 2024 home-and-children deprivation through later March 2024 temporary-order documents presented as agreed;

- the February 1, 2024 associate judge report required preparation of a typed order, attorney approval, and a motion to sign if agreement was not reached, yet Plaintiff says the current docket shows no such motion-to-sign filing and no filed response or countermotion to his emergency motion before Carter used the March 14 setting to obtain later-filed temporary-order papering;

- presenting or obtaining March 2024 temporary-order documents after a March 14 setting arranged as a hearing on Plaintiff's emergency motion, without notice that the setting would be used as a temporary-orders merits hearing or motion-to-sign substitute, with no filed response or countermotion to that emergency motion located before the setting, and with recitals of agreement and hearing history Plaintiff says were false or facially unsupported;

28

- the March 2024 papering was then treated by state actors as operative even though Plaintiff says it was not served or filed at the time of the setting, did not show his assent on its face, and was later filed on March 26, 2024 together with the associate judge report and related preparatory materials;

- the May 9, 2024 IWO sequence in which Carter described withholding relief as already agreed and court ordered while also saying she would later file it and submit it for signature;

- the failed private withholding effort followed by the June 28, 2024 Title IV-D intervention seeking the same arrears-and-withholding objectives, carrying conflicting Hayes, Burkley, and Office Filer 914 attorney indicators on its face, and plausibly serving to give OAG-backed validity and enforcement force to the disputed March 2024 temporary-order sequence Carter had already been using;

- Munford's later December 9, 2025 and January 12, 2026 directions that Carter prepare the denial order and final order while the same threshold defects remained unresolved;

- Carter's continued exploitation of that intervention and resulting enforcement posture; and

- the later defense of that posture while the actual signer or authorizer of the June 28 intervention remained unidentified through any Hayes-specific, filing-specific identification process.

134. Plaintiff further alleges, on information and belief, that Carter used or caused use of Holly Hayes's identity, apparent signature authority, or filing authority on the June 28, 2024 intervention as if Hayes were the signing or authorizing OAG attorney for that filing, or at minimum caused, procured, directed, requested, or materially participated in that false or unauthorized Hayes-based use after her failed private IWO effort did not succeed, in order to present the June 28 filing as an ordinary OAG-backed intervention capable of validating and enforcing the same disputed March 2024 temporary-order sequence and support posture.

29

135. Plaintiff bases that allegation on the presently known particulars taken together, not on signature appearance alone: the specific instrument was the June 28, 2024 intervention filed through Office Filer 914 on behalf of Holly Hayes; it carried Hayes in the signature block, Burkley in the manual certificate, and Office Filer 914 on behalf of Hayes in the filing path; it therefore presented Hayes to the court and opposing party as the relevant OAG attorney for the filing even though no Hayes-specific identification of the actual signer, filer, reviewer, or authorizer was later supplied; it sought the same arrears-and-withholding objectives as Carter's failed May 9 IWO effort and plausibly functioned to convert Carter's already disputed March 2024 papering into a state-backed arrears-and-withholding posture; the challenged filing used a different signature mechanism and embedded signature asset than sampled Hayes filings; Plaintiff began objecting to the intervention on June 30, 2024 and kept pressing the issue through the February 2026 strike hearing without a Hayes-specific, filing-specific answer; the State later responded with interchangeability, contract-attorney, and contingent-worker explanations instead of a Hayes-specific identification; Hayes later disappeared from the case without a formal substitution explanation while Burkley appeared; Hayes remained anomalous in the later personnel materials; and Carter later continued to exploit the resulting state-backed enforcement posture.

136. Plaintiff pleads Carter's role on information and belief because the precise identity of the person who inserted the challenged signature asset, used Office Filer 914 on behalf of Hayes, or authorized that filing in Hayes's name is peculiarly within Defendants' knowledge. Plaintiff alleges the timing, motive, Hayes-presenting filing path, signature-mechanism mismatch, February-to-March papering sequence, generic OAG response, Hayes's anomalous status, the denial of Plaintiff's request to produce Hayes, and Carter's later exploitation of the resulting enforcement posture plausibly support an inference of joint participation or significant official aid rather than mere resort to court

30

process alone. Plaintiff does not contend these facts conclusively establish criminal conduct at the pleading stage.

137. Plaintiff seeks damages from Carter only for actual injuries independently caused by that alleged false or unauthorized Hayes-based invocation of Title IV-D power and the resulting enforcement leverage, including additional wage, money, credit, and property exposure, additional business and housing disruption flowing from the maturing arrears-and-withholding posture, emotional distress if proven, and at least nominal damages if actual injury is not fully proved. Plaintiff does not seek damages based on the abstract value of due process or merely because the decree exists.

138. To the extent the facts show only ordinary private-lawyer conduct or only unilateral private misuse not fairly attributable to the State, this count fails. If the evidence proves the narrower joint-action theory, Plaintiff seeks compensatory damages for actual injury, nominal damages if required, and punitive damages only to the extent the evidence shows evil motive or intent, or reckless or callous indifference to Plaintiff's federally protected rights.

## COUNT V - ALTERNATIVE 42 U.S.C. section 1983 DAMAGES AGAINST MYERS ON A NARROW JOINT-ACTION THEORY

139. Plaintiff incorporates the preceding allegations.

140. Plaintiff does not allege that passive receipt of favorable state-court benefits, standing alone, is enough for 42 U.S.C. section 1983 liability.

141. This count is pleaded only under the narrow joint-participation principles recognized in Dennis v. Sparks, 449 U.S. 24 (1980), and Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982). Plaintiff instead pleads this count only on the narrower theory that Myers jointly participated with Carter and willing state actors in a police-assisted and court-paper-assisted exclusion process that, if proven, exceeded passive receipt of litigation benefits and deprived Plaintiff of constitutionally adequate process. This count

does not rest on passive benefit alone, on ordinary filing activity alone, or on officers merely responding to a private complaint without materially assisting the deprivation. Plaintiff alleges Myers used overlapping filings, court-generated exclusion papers, and later police-backed exclusion to obtain or preserve state implementation of her desired result before Plaintiff had received a completed and orderly hearing process on that deprivation.

142. The specific conduct Plaintiff relies on against Myers includes:

- the alleged March 6, 2024 lockout from the Anne Court residence while Plaintiff was walking the children to school, during which responding officers recommended he leave after Myers showed them the signed associate judge report, which Plaintiff alleges made the officers' response function as material state assistance rather than mere passive presence;

- using and preserving the December 2023 and January 2024 opening sequence that produced the initial January 16, 2024 out-of-home and children-related exclusion posture;

- knowingly retaining the benefit of March 2024 temporary-order documents that did not constitute a true agreed order and that Plaintiff says were obtained after a March 14 setting he understood to be on his emergency motion rather than on a newly noticed temporary-orders merits hearing;

- retaining the home-possession and child-residence benefits of those documents through a prolonged period of minimal or reactive merits prosecution while Plaintiff kept seeking review;

- accepting and retaining the benefit of the June 28, 2024 OAG intervention and the later arrears-and-withholding posture while Plaintiff was challenging the intervention's signatory authority; and

- continuing to use the same cause and enforcement posture against Plaintiff despite the unresolved Hayes signer-identification problem.

143. Plaintiff alleges the core state-action episode for this count is the March 6, 2024 police-backed lockout and related use of court-generated exclusion papers. Plaintiff pleads that episode as more than a bare request for police assistance because, on his allegations, Myers presented the signed associate judge report as the operative paper justifying exclusion and the officers then recommended he leave, effectively helping make the exclusion immediate and complete. Plaintiff pleads the later March 2024 temporary-order documents and later OAG-backed enforcement posture primarily as corroborative continuation and preservation of the same exclusionary course, not as standalone state-action episodes by themselves.

144. Plaintiff alleges Myers knew the March temporary orders were not a true agreed order because Plaintiff did not sign them, the filed order did not show the signatures its recital said evidenced agreement, Plaintiff had repeatedly stated that the residence was the base of his work-from-home parenting and home-based business, and Myers nonetheless retained the benefit of those orders as later state ratification of the same exclusion while using the developing paper trail to preserve exclusive possession of the home and day-to-day control of the children through a prolonged period in which Plaintiff alleges the case was not being ordinarily prosecuted on the merits.

145. Plaintiff further alleges, on information and belief, that Myers and Carter pursued the same withholding and enforcement sequence that preserved the challenged deprivation, as reflected by Carter's May 9, 2024 IWO effort on Myers's behalf and Myers's later acceptance and use of the June 28, 2024 intervention and resulting enforcement posture. Plaintiff pleads that as circumstantial evidence of coordination and role allocation in the same exclusion-and-enforcement course, not as a direct allegation of a separately proven express agreement.

146. Plaintiff alleges those facts plausibly show joint participation with state actors only if they establish an actual agreement, meeting of the minds, or comparable corruption of state process, including material state assistance or abandonment of the ordinary independent safeguards that normally separate a private litigant's wishes from official coercive action, rather than passive receipt of litigation benefits, a bare request for police assistance, or mere reliance on favorable court orders.

147. Plaintiff pleads this count in the alternative. To the extent the facts show only passive receipt of favorable state-court benefits, this count fails. Plaintiff pleads it only on the narrow joint-action theory stated above.

148. Plaintiff seeks compensatory damages for actual injury, nominal damages if required, and punitive damages from Myers only to the extent the evidence shows evil motive or intent, or reckless or callous indifference to Plaintiff's federally protected rights. The actual injuries Plaintiff attributes to Myers's pleaded joint-action theory include loss of home possession, loss of daily parenting and companionship, business disruption from loss of home-based infrastructure, increased housing and cost-of-living expenses and debt later described in Plaintiff's sworn inventory, property losses, and emotional distress to the extent proximately caused by the narrow joint-action theory pleaded here.

149. Plaintiff further alleges that the damages claims pleaded against Carter and Myers are timely because this action was commenced on February 20, 2026, within two years of the March 6, 2024 police-backed lockout and within two years of the May 9, 2024 and June 28, 2024 withholding-and-intervention events relied on here, and that this amended complaint relates back to the original filing to the extent relation back is required.

**PRAYER**

Plaintiff respectfully requests that the Court:

1. enter a declaration under 28 U.S.C. section 2201 that Plaintiff did not receive constitutionally adequate process before the January 16, 2024 removal-before-hearing

34

sequence deprived him of home possession, his ordinary care, custody, and control position with his children, and related property interests, and that the later March 14, 2024 purported agreed temporary-order sequence and June 28, 2024 intervention did not supply or retroactively cure that missing process in cause number 322-744263-23;

2. enter a declaration under 28 U.S.C. section 2201 that the Child Support Division may not initiate, request, or use further Title IV-D enforcement against Plaintiff in cause number 322-744263-23 based specifically on the June 28, 2024 intervention unless the actual signer, filer, reviewer, or authorizer of that intervention is identified through a Hayes-specific, filing-specific identification process and Plaintiff is afforded a constitutionally adequate opportunity to challenge authenticity and authority before that particular intervention is used as a predicate for additional enforcement action against him;

3. enter a declaration under 28 U.S.C. section 2201 that the Rule 18a transmission and assignment-maintenance path used in Plaintiff's cause materially departed without rational basis from the neutral baseline applicable to similarly situated recusal movants, and that continued use of the same unequal path against Plaintiff in that cause is inconsistent with the Fourteenth Amendment;

4. enter a permanent injunction against Thornton, her successor, and the officers, agents, servants, employees, attorneys, and persons in active concert or participation with that office, prohibiting initiation, request, or use of further Title IV-D enforcement measures against Plaintiff that depend specifically on the June 28, 2024 intervention unless and until the actual signer, filer, reviewer, or authorizer of that intervention is identified through a Hayes-specific, filing-specific identification process and Plaintiff is afforded a constitutionally adequate opportunity to challenge authenticity and authority before that particular intervention is used as a predicate for additional enforcement action against him;

5. award compensatory damages against Carter and Myers in an amount to be proven, but only to the extent the evidence establishes the narrow joint-action theories pleaded above and actual injury proximately caused by those theories, including economic loss, increased debt and housing expense, loss of business infrastructure or business value if proven, property loss, and noneconomic harm from deprivation of parental association, home use, and emotional distress if proven;

6. award nominal damages against Carter and Myers on the same theories;

7. award punitive damages against Carter and Myers on the same theories, but only to the extent the evidence proves evil motive or intent, or reckless or callous indifference to Plaintiff's federally protected rights;

8. award costs and all other relief to which Plaintiff may be justly entitled, so long as that relief does not require this Court to vacate, modify, or recalculate the Texas divorce decree.

## JURY DEMAND

Plaintiff demands a jury on all claims so triable.

Respectfully submitted,


*/s/ Charles Dustin Myers*
Charles Dustin Myers
1209 Blairwood Drive
Flower Mound, Texas 75028
817-546-3693
chuckdustin12@gmail.com
Dated: April 7, 2026

36